**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MICHELLE HOUCKS; et al.
Plaintiffs,

v. Case No. 2:23-cv-02489-TC-BGS

UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KANSAS; et al.,
Defendants.

---

**Motion to Dismiss and Supporting Brief**

The Unified Government of Wyandotte County and Kansas, City, Kansas; Thomas Dailey; James Swafford; Ronald Miller; Terry Zeigler, Michael Kill, Clayton Bye and Dennis Ware (collectively "these Defendants" or "these moving Defendants" which includes all defendants other than defendant Roger Golubski) move, pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss plaintiffs' complaint and all claims for failure to state a claim upon which relief may be granted.

**I. Nature of the Case**

This is a civil rights action under 42 U.S.C. § 1983. Plaintiffs variously allege their constitutional rights were violated from 1992 to 2002. The claims are time barred and the Complaint fails to state a claim upon which relief may be granted.

**II. Statement of Facts**

**A. The claims by each plaintiff.**

***Plaintiff Michelle Houcks***: Houcks alleges she was raped by Roger Golubski in September 1992. *Doc. 1*, ¶¶ 56-66. The last act alleged by Plaintiff Houcks, occurred "[a]pproximately two months" after the alleged rape September 1992, *id.*, ¶ 69, or 30 years and 11 months preceding the filing of the Complaint, *Doc. 1*.

***Plaintiff Saundra Newsom***: Newsom alleges her son, Doniel Quinn, was murdered April 15, 1994. Newsom alleges she was propositioned or "harassed" during the investigation of that murder by Roger Golubski in the "days" and "weeks" following the murder. *Id.*, ¶¶ 74-113. The last act alleged by Plaintiff Newsom was being propositioned by Golubski during a visit in which Golubski informed her "I think we got us a suspect." *Id*, ¶ 94. If it is assumed the visit by Golubski occurred on the last day of 1994, the last act alleged occurred 28 years and 10 months preceding the filing of the Complaint.

***Plaintiff Niko Quinn***: Quinn alleges Roger Golubski, in 1994, along with prosecutor Terra Morehead left a message for Quinn that if Quinn did not contact Morehead "sooner than later," they would take Quinn's children away, who would never again be seen by Quinn. *Id.,* ¶ 130. Quinn alleges Golubski, Ware and Morehead coerced her into falsely identifying Lamonte McIntyre as a murderer, ¶ 133, alleges she was "stalked" by Golubski from 1994 to 2012, alleges she was assaulted by an unknown KCKPD officer on January 16, 2000, and filed a complaint with Internal Affairs, ¶ 146, alleges Golubski told her to drop the complaint and assaulted her with a baton, ¶¶ 148-149, and alleges Golubski told her, in 2012, "I'm mad at you because you told on me." ¶ 152. If it is assumed the visit by Golubski occurred on the last day of 2012, the last act alleged occurred 10 years and 10 months preceding the filing of the Complaint.

Defendant Ware is mentioned in ¶¶ 125, 126 and 133 of the Complaint, *Doc. 1*. The facts specific to Ware are (1) his presence and participation in the photo array on April 16, 1994, *Id.*, ¶ 125, and (2) "falsified details of this identification in their written reports." *Id.*, ¶ 126. The complaint does not tie Ware to the "combination of threats of physical harm, threats against her children, and promises of financial help" which are alleged in ¶ 133. The last act involving Quinn and defendant Ware is alleged to have occurred on April 16, 1994, when Ware

accompanied Golubski to show Quinn a photo array. *Id*., ¶ 125. Quinn alleges Golubski and Ware showed Quinn an improperly suggestive photo array and that Ware held up LaMonte McIntyre's photo, showed his name, and loudly instructed "you know who it is." *Id*. This was 29 years 6 months preceding the filing of the Complaint.

***Plaintiff Ophelia Williams***: Williams alleges Golubski targeted her before August 1999 and that during the execution of a search warrant at her home on August 8, 1999, that Golusbki sat in the living room with her and her 12-year-old daughter while the house was searched. Golubski leered and at her and daughter. Williams' 14-year-old twin sons, Ronell and Donell, were arrested for murder and coerced by unidentified officers to confess to save their 13-year-old brother, Ortez. Williams alleges Golubski returned several days later and raped her while claiming he could help her sons. Williams alleges Golubski returned a week or two later and raped her again and this went on for years. Williams alleges Golubski told her on two occasions to hurry up because his partner, Zeigler, was with him. Zeigler investigated the case against Williams' twin sons. ¶¶ 153-177.

Ronell Williams was convicted by a jury of two counts of premeditated first-degree murder, one count of aggravated robbery, and one count of aggravated burglary. He was sentenced to two hard 50 terms, a term of 59 months, and a term of 32 months, all to run concurrently. *State v. Williams*, 277 Kan. 338, 338–39, 85 P.3d 697 (2004). Donell Williams pled guilty to two counts of first-degree murder[]. He was sentenced to concurrent terms of life in prison with a possibility of parole after 25 years." *State v. Williams*, 275 Kan. 284, 284, 64 P.3d 353, 354 (2003). Ronell Williams has been in the custody of the Kansas Department of Corrections since March 8, 2001. *Exhibit 1, KASPER Report Ronell Williams*. Donell Williams has been in the custody of the Kansas Department of Corrections since March 8, 2001. *Exhibit 2,*

*KASPER Report Donell Williams*. The Complaint does not challenge in its Prayer for Relief the convictions and/or sentences of Ronell and Donell Williams or seek relief from those convictions. The *Complaint*, page 133.

***Richelle Miller***: Plaintiff alleges she was awakened on June 4, 2002, at 4:14 a.m. by police to identify the body of her father. Miller alleges she was shown at badly burnt body by Detectives Kill and Bye. Miller alleges Kill and Bye then took her to police station where Kill and Bye interrogated her for 19 hours, that she was not advised of her *Miranda* rights and she was not permitted to leave. Miller alleges Kill, while alone with her, rubbed her shoulders and propositioned her to get on the table and he could make this all go away. Bye later came back and took her home. *Doc. 1,* ¶¶ *178-193.* This was 21 years 4 months preceding the filing of the Complaint.

**B. Specific alleged conduct/acts involving these moving Defendants.**

***Thomas Dailey*****:** Dailey was the Chief of Police from May 1989 to 1994. *Doc. 1,* ¶ *24*. Dailey attended a meeting also attended by Plaintiff Newsom in 1994. *Id.*, ¶¶ 83-84. No other specific act or conduct is alleged against Dailey.

***James Swafford*****:** Swafford was the Chief of Police from 1995 to 2000. *Id.,* ¶ *25*. No specific act or conduct is alleged against Defendant Swafford.

***Ronald Miller*****:** Ronald Miller was the Chief of Police from 2000 to 2006. *Id.,* ¶ *26.* No specific act or conduct are alleged against Defendant Miller.

***Dennis Ware***: The alleged facts specific to Ware are (1) his presence and participation in the showing the photo array to Quinn on April 16, 1994, *Doc. 1*, ¶ 125, and (2) "falsified details of this identification [by Quinn] in their written reports." *Id.*, ¶ 126.

***Terry Zeigler***: Zeigler was the Chief of Police from 2015 to 2019. *Id.,* ¶ *26.* The alleged facts specific to Zeigler are: (1) he was assigned to investigate the Williams' homicide cases. *Id.*,

¶ 164. (2) Golubski said Zeigler was waiting in the patrol car during two occasion when Golubski visited Williams and demanded oral sex. *Id.*, ¶ 171. (3) Zeigler "committed multiple improper investigative practices to falsely convict Williams' sons, Ronell and Donell. KCKPD coerced false murder confessions from the 14-year-old twins," *Id.*, ¶ 219.

***Michael Kill***: The alleged facts specific to Kill are: (1) Kill was present when Richelle Miller viewed her fathers burned body on June 4, 2002. *Id.*, ¶ 180. (2) Kill explained Miller's father had been killed between 12:30 and 4:00 a.m. *Id.*, ¶ 183. (3) Kill interrogated Miller for approximately 19 hours and did not allow Miller to leave when she asked to do so. *Id.*, ¶¶ 184, 185, 187, 191, and 193. (4) Kill is alleged to have rubbed Miller's shoulders and suggest that Miller have sex with him. *Id.*, ¶¶ 188-189.

***Clayton Bye***: The alleged facts specific to Bye are: (1) Bye was present when Richelle Miller viewed her father's burned body. *Id.*, ¶ 180. (2) Bye explained Miller's father had been killed between 12:30 and 4:00 a.m. *Id.*, ¶ 183. (3) Bye interrogated Miller for approximately 19 hours and did not allow Miller to leave when she asked to do so. *Id.*, ¶¶ 184, 185, 187, 191, and 193. (4) At 2:00 a.m., Bye drove Miller to her car at the morgue. *Id.*, ¶ 192.

## III. Issues Presented

The overarching issue presented is that Plaintiffs' Complaint fails to state a claim against these defendants upon which relief may be granted.

## IV. Argument and Authorities

### A. Standard of Review. The complaint is replete with formulaic, conclusory allegations unsupported by factual allegations.

This motion is presented under both Rule 8 and Rule 12(b)(6). Rule 12(b)(6) requires a complaint to contain sufficient factual matter "accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim requires sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While the Court accepts all well-pleaded allegations as true, it need not accept legal conclusions. *Id*. Conclusory statements are not entitled to the presumption of truth. *Id*. at 678-79. The court need not accept "conclusory allegations without supporting factual averments." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (cleaned up). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555)). In addition to failing to state a claim under Rule 12(b)(6), the Complaint "is inadequate both for failure to provide fair notice and because, even if we take all well-pleaded facts in the complaint as true, the plaintiffs have failed to present a plausible right to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). For claims under § 1983 involving multiple government entities and actors, fair notice under Rule 8(a)(2), makes it "particularly important" for the pleading to "make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.*

**B. Plaintiffs' claims are barred by both the statute of repose and the statute of limitations.**

**1. The statute of limitations bars plaintiffs' claims.**

Plaintiffs' claims are barred by the statute of limitations.

**a. Federal law borrows the limitations periods from the state in which the claim arose.**

Controlling precedent from the United States Supreme Court and the Tenth Circuit provides the limitations period for a § 1983 claim is dictated by the personal injury statute of limitations in the state in which the claim arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011). This is a federal statute of limitations, applied and incorporated through 42 U.S.C. § 1988. "The Reconstruction Civil Rights Acts do not contain a specific statute of limitations governing § 1983 actions—'a void which is commonplace in federal statutory law.'" *Wilson v. Garcia*, 471 U.S. 261, 266 (1985) (quoting *Board of Regents v. Tomanio*, 446 U.S. 478, 483 (1980)) (footnote omitted).

> When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so.

*Id*., at 266-67. In *Burnett v. Grattan*, the Supreme court noted:

> The century-old Civil Rights Acts do not contain every rule of decision required to adjudicate claims asserted under them. In the absence of specific guidance, Congress has directed federal courts to follow a three-step process to borrow an appropriate rule. 42 U.S.C. § 1988.10 First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." *Ibid*. If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. *Ibid*. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States." *Ibid*.

468 U.S. 42, 47–48 (1984) (alteration in original).

**b. Plaintiffs' claims are barred by Kansas' two-year statute of limitations in K.S.A. § 60–513(a)(4).**

The Supreme Court instead initially directed federal and state courts to "borrow" a statute of limitations from the law of the relevant state. *See Board of Regents v. Tomanio*, 446 U.S. 478, 483 (1980). "Limitations periods in § 1983 suits are to be determined by reference to the

appropriate 'state statute of limitations and the coordinate tolling rules[.]'" *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (quoting *Tomanio,* 446 U.S. at 484). Borrowing the state's statutes of limitations and tolling rules did not defeat §1983's chief goals of compensation and deterrence or its subsidiary goals of uniformity and federalism. 446 U.S. at 488–492.

The Supreme Court clarified there is a single statute of limitations for § 1983 actions in each state and that the appropriate statute is the residual personal injury statute of limitations. *Wilson v. Garcia*, 471 U.S. at 276–80. It is well-established in Kansas that the appropriate statute of limitations for § 1983 suits is the two-year statute of limitations under K.S.A. 60–513(a)(4), the limitations period for "an action for injury to the rights of another, not arising on contract and not herein enumerated." *See Brown v. Unified Sch. Dist. 501*, 465 F.3d 1184, 1188 (10th Cir. 2006).

**c. Accrual: Plaintiffs' claims accrued between 1992 and 2002.**

The court also borrows the state's rules for tolling the statute of limitations. *Wallace*, 549 U.S. at 394. Federal law determines when a federal action based on federal law is commenced for purposes of the statute of limitations. *West v. Conrail*, 481 U.S. 35, 39 (1987); *Kripp v. Luton,* 466 F.3d 1171, 1175 (10th Cir. 2006). Claims arising out of police actions are presumed to have accrued when the actions occurred. *Johnson v. Johnson County Commission Board*, 925 F.2d 1299, 1301 (10th Cir. 1991). A civil rights action accrues when the injury is known to the plaintiff. *Baker v. Board of Regents*, 991 F.2d 628, 632 (10th Cir. 1993).

Plaintiff Houcks' claim accrued in 1992. Plaintiff Quinn's claims against Ware accrued in April 1994, at the death of Doniel Quinn and when Ware allegedly showed her a suggestive photo array and -- at the latest -- in 2002 (when she alleges she was threatened and assaulted by Golubski). Plaintiff Williams' claim accrued in 1999 and, at the latest, in 2001 when her sons were convicted, sentenced and placed into the custody of the Kansas Department of Corrections.

Plaintiff Newsom's claim accrued in April 1994, at the death of Doniel Quinn. Plaintiff Miller's claim accrued June 4, 2002, when she was allegedly interrogated and propositioned. *See, §§ II A and B, supra.* Thus, all claims accrued, at the latest, on June 5 2002 (when Plaintiff Miller was taken back to the morgue) and became time barred, at the latest on June 5, 2004.

**d. There is no tolling for plaintiffs' claims and estoppel does not apply.**

"As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). When the dates in complaint make clear that right sued upon has been extinguished by the statute of limitations, the plaintiff has burden of establishing factual basis for tolling. *Aldrich*, 627 F.2d at 1041 n.4. Equitable tolling requires the plaintiff establish: (1) diligent pursuit of her rights, , and (2) some extraordinary circumstance stood in the way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is an "exception, not the rule," and should be applied only in limited circumstances. *Rotella v. Wood*, 528 U.S. 549, 561 (2000); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). The Tenth Circuit also imposes a diligence requirement. *Sigala v. Bravo*, 656 F.3d 1125, 1128 (10th Cir. 2011) (equitable tolling is appropriate only in rare and exceptional circumstances) *Id*.

The plaintiff must establish these elements with specific facts. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008). The "circumstances that caused a litigant's delay [need be] both extraordinary and beyond [his] control." *Menominee Indian Tribe v. United States*, 577 U.S. 250, 257 (2016). *See also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). The complaint does not allege any specific facts establishing (1) that any has been diligently pursuing her rights or (2) that some extraordinary circumstance stood in her way.

"Equitable estoppel is a way of saying that the statute of limitations and the

> statute of repose are valid and would be absolute defenses to this action but because of your conduct as a litigant, you, and only you, will not be permitted to raise those defenses."

*Robinson v. Shah*, 23 Kan. App. 2d 812, 829, 936 P.2d 784 (1997). "A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence, when it had a duty to speak, induced it to believe certain facts existed." *Rockers v. Kan. Turnpike Auth.*, 268 Kan. 110, 116, 991 P.2d 889 (1999) (quoting *United Am. State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc*., 221 Kan. 523, 527, 561 P.2d 792 (1977)).

> Equitable estoppel "prevent[s] a party from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage" (Penny v. Giuffrida, 897 F.2d 1543, 1545 (10th Cir.1990)). There are four elements of a traditional estoppel claim (id. at 1545–46):
>
>> (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury.
>
> And mere reliance is not enough—such reliance on an adversary's misrepresentations "must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading" (*Heckler v. Cmty. Health Servs*., 467 U.S. 51, 59 (1984); *Emery Mining Corp. v. Sec'y of Labor*, 744 F.2d 1411, 1417 (10th Cir.1984)).

*Spaulding v. United Transp. Union*, 279 F.3d 901, 909 (10th Cir. 2002)

Under federal law, "a nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in favor 'of equitable tolling.'" *Holland v. Florida*, 560 U.S. 631, 645-46 (2010) (quoting *Irwin*, 498 U.S. at 95-96. Just as Kansas law would under this framework, if a statute of limitations is subject to equitable tolling the plaintiff "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." 560 U.S. at 649.

Under both *Rockers* and *Holland—i.e.,* under both Kansas and federal law—the plaintiff

bears the burden of presenting and proving entitlement to equitable estoppel. *In re Bell*, 317 Kan. at 339–40; *Holland*, 560 U.S. at 646. Under the *Holland* framework, also applied by Kansas law, the plaintiff must prove diligent pursuit of the plaintiff's rights and an extraordinary circumstance that prevented plaintiff from timely filing plaintiff's claim. *In re Bell*, 317 Kan. at 340. None of the facts alleged in the complaint justify any alleged belief by the plaintiffs that they could not resort to the courts with their claims.

**2. The statute of repose bars plaintiffs' claims.**

Statutes of repose are distinct from statues of limitations. *Harding v. K.C. Wall Products, Inc.,* 250 Kan. 655, 668, 831 P.2d 958 (1992). While a "statute of limitations extinguishes a right to prosecute an accrued cause of action after a period of time," a statute of repose "*abolishes a cause of action* after the passage of time even though the cause of action may not have yet accrued." *Id.* at 967-68. Statutes of repose, unlike statutes of limitations, begin to run at the time of the act giving rise to the claim, not at the time of accrual. Statutes of limitations generally run from the time of injury or from the time the injury is discoverable, and they serve to limit the time in which an action may be commenced after it has accrued. *Menne v. Celotex Corp.*, 722 F.Supp. 662, 665 (D.Kan. 1989). The Supreme Court made clear, "state policies of repose cannot be said to be disfavored in federal law." *Bd. Of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 488 (1980).

**C. The Complaint fails to state a familial association claim under § 1983.**

Plaintiffs Quinn,[1] Newsom,[2] and Williams[3] assert claims for deprivation of familial association. A claim for interference with familial relationships requires "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association … ."

[1] Plaintiff Quinn's allegations are at *Doc. 1*, pp. 93-94 ¶¶ 347, 349.
[2] Plaintiff Newsom's allegations are at *Doc. 1*, pp. 104-05, ¶¶ 401, 403.
[3] Plaintiff Williams 's allegations are at *Doc. 1*, pp. 116, ¶¶ 458, 460.

*Trujillo v. Board of County Comm'rs*, 768 F.2d 1186, 1190 (10th Cir. 1985). To plead a plausible § 1983 claim for deprivation of familial association, a plaintiff must allege facts showing "intent to interfere with this right—that is, the state actor must have directed conduct at the familial relationship with knowledge that the statements or conduct will adversely affect that relationship." *Doe v. Woodard*, 912 F.3d 1278, 1301 (10th Cir. 2019) (emphasis and internal quotation marks omitted). The intent element cannot be established by showing only the defendant's wrongful intent toward the victim. *Trujillo*, 768 F.2d at 1190. Each plaintiff fails to allege that the individual Defendants intended to interfere with that relationship.

**D. The Complaint fails to state a claim under § 1983 for failure to intervene**

"The Tenth Circuit has recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022) (internal quotation marks omitted). A constitutional violation for a failure to intervene requires that the plaintiff plausibly allege:

> that 1) a government officer violated his constitutional rights, 2) a different government actor (the defendant) observed or had reasons to know about that constitutional violation, and 3) the defendant had a realistic opportunity to intervene, but failed to do so.

*Id*. In *Bledsoe*, the Tenth Circuit held for the first time that "a failure-to-intervene claim is not limited to excessive force violations, but can involve other underlying constitutional violations." *Id.*, at 617. The *Bledsoe* Court held, however, the individual defendants were entitled to qualified immunity because the failure-to-intervene claim was not clearly established and plaintiffs could not meet their burden of showing the alleged violation was clearly established. *Id*., at 617 n.25 (citing *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015)).

**E. The Complaint fails to state a § 1983 conspiracy claim against these defendants.**

The Tenth Circuit recognizes conspiracy claim under § 1983—*i.e.*, "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). "Provided that there is an underlying constitutional deprivation, the conspiracy claim allows for imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy." *Id.* "Conclusory allegations of conspiracy [however] are insufficient to state a valid § 1983 claim." *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998)), *cert. denied*, ___ U.S.___, 142 S. Ct. 427 (2021).

For a claim under § 1983, the plaintiff must "make clear exactly who is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis original). Plaintiffs' collective references to "the Police Chief Defendants" and "Detective Defendants" does not suffice. The Complaint fails to allege specific facts shown any of these defendants were part of a conspiracy to violate their rights.

**F. The Complaint fails to state a claim for supervisor liability under § 1983.**

Plaintiffs assert supervisor liability claims in Counts 4, 10, 16, 22, and 27. Such claims are often referred to "supervisory liability," but this label can be misunderstood as implying vicarious liability. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013). "Section 1983 does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Thus, the term "supervisory liability" is "a misnomer." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "Absent vicarious liability, each

Governmental official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id*.

A § 1983 claim against a supervisor based on unconstitutional acts of a subordinate requires more than "a supervisor's mere knowledge of his subordinate's" conduct. *Schneider*, 717 F.3d at 767; *see also Iqbal*, 556 U.S. at 677. The plaintiff must "plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The "affirmative link" requirement consists of three elements, all of which are required to establish a successful § 1983 claim based on supervisory responsibilities: (1) personal involvement, (2) causation, and (3) state of mind. *Schneider*, 717 F.3d at 767. A plaintiff cannot recover under § 1983 "without demonstrating that official violated his constitutional or statutory rights[.]" *Dodds*, 614 F.3d at 1193–94.

**G. Plaintiff Williams' claims which are predicated on the convictions of her sons, if any, are barred by *Heck v. Humphrey*.**[4]

Plaintiff Williams is estopped from asserting a claim predicated on the alleged false or wrongful convictions of her sons. "[T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal," or otherwise declared invalid, called into question by the issuance of a habeas writ, or expunged. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). *See also Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (concluding that *Heck* applies to a federal civil rights claim). Plaintiff Williams is estopped from claiming her sons were not guilty

[4] Plaintiff Williams claims related to allegedly being raped by Golubski from 1999-2001 are not subject the bar of *Heck v. Humphrey*. They accrued at that time and became time barre in 2003.

of the murders of Wilbur and Wilma Williams. *See Doc. 1, ¶¶ 155, 162*. Plaintiff Williams is also precluded from any claim that the conviction, sentence and incarceration violated the Fourth or Fourteenth Amendments because "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487.

**H. The complaint fails to state a Monell claim.**

There is no vicarious liability or respondeat superior for claims under § 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). When a plaintiff alleges a City violated § 1983, plaintiff must show underlying violation of plaintiff's, *e.g., Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998), and that the entity itself is responsible for, or directly caused, the violation through an official custom or policy. *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017). As discussed above, because there is no underlying violation by the individual defendants, the Unified Government is entitled to dismissal of the *Monell* claim against it. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir.1993).

The *Monell* claims should be dismissed for (1) failure to allege a constitutional violation and (2) failure to allege a municipal policy or custom and (3) failure to link plaintiffs' alleged injury to a custom or practice attributable to the City. *Crowson v. Washington Cnty*, 983 F.3d 1166, 1186 (10th Cir. 2020) ("claim under § 1983 against either an individual actor or a municipality cannot survive a determination that there has been no constitutional violation); *Pyle*, 874 F.3d at 1266 (failure to adequately allege either a municipal policy, or a link between a policy or custom and the alleged injury is fatal to a *Monell* claim—conclusory, formulaic recitation of the elements is insufficient).

**I. The individual officer defendants are entitled to qualified immunity.**

Defendants Thomas Dailey, James Swafford, Ronald Miller, Terry Zeigler, Michael Kill, Clayton Bye and Dennis Ware are entitled to qualified immunity.

Qualified immunity protects officers from suit when the officer does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known. *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774 (2015). "Law enforcement officers are, of course, entitled to a presumption that they are immune from lawsuits seeking damages for conduct they undertook in the course of performing their jobs." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011). A plaintiff overcomes the presumption of immunity "only by carrying the heavy burden of showing both that (1) the defendant-officer in question violated one of his constitutional rights, and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that every 'reasonable official would have understood that what he [was] doing' violated the law." *Kerns*, 663 F.3d at 1180 (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011)). "Failure on either qualified immunity element is fatal to the plaintiff's cause." *Id.*

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341(1986)). Plaintiffs are required to show (1) that "the defendant's actions violated a constitutional or statutory right," and (2) "that the right was 'clearly established at the time of the conduct at issue.'" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)). To be clearly established, existing case law must place a constitutional question beyond debate. *Pauly v. White*, 874 F.3d 1197, 1222 (10th Cir. 2017) (requiring a United States Supreme Court or Tenth Circuit decision on point). The right cannot be defined at high levels of generality, but instead the focus "is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis original) (quoting *al-Kidd,* 563 U.S. at 741). "A clearly established right is one

that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. at 11.

When asserting the qualified immunity defense a defendant triggers the "well-settled twofold burden [plaintiff is] compelled to shoulder: not only must plaintiff rebut defendant's no-constitutional-violation arguments, but [he] also had to demonstrate that any constitutional violation was grounded in then-extant clearly established law." *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015). Plaintiffs cannot overcome this hurdle to meet their burden.

**J. Matrix addressing each claim against these defendants.**

| Plaintiff(s) | Claim(s) | Bases for dismissal on 12(b)(6) motion |
|---|---|---|
| Houcks | Count 2[5] – Failure to intervene against Dailey, Zeigler, Ware, Kill and Bye | 1) Statute of limitations;<br>2) Statute of repose;<br>3) The alleged conduct Dailey, Zeigler, Ware, Kill and/or Bye (a) are not alleged to have deprived Houcks of any constitutional right, (b) are not alleged to have observed or had reason to know about the alleged constitutional violation by Golubski, and (c) are not alleged to have had a realistic opportunity to intervene.<br>4) Dailey, Swafford, Zeigler, Ware, Kill and Bye are entitled to qualified immunity because:<br>a) they did not violate Houck's constitutional rights, and<br>b) the right alleged to have been infringed (failure to intervene) was not clearly established at the time of the allegedly unlawful conduct. |
| | Count 3 – Conspiracy against Dailey, Zeigler, Ware, Kill and Bye | 1) Statute of limitations;<br>2) Statute of repose;<br>3) Lack of an underlying violation by defendants Dailey, Zeigler, Ware, Kill and/or Bye;<br>4) Failure to allege specific facts showing (a) an agreement and concerted action among the defendants, (b) an agreement on a common, unconstitutional goal with concerted action undertaken to advance that unconstitutional goal, and/or (c) from acts furthering the conspiracy's purpose. |
| | Count 4 – Supervisor | 1) Statute of limitations; |

[5] Count 1, against defendant Golubski only, asserts a claim by plaintiff Houcks for deprivation of liberty.

| | | |
|---|---|---|
| | liability against Dailey | 2) Statute of repose;<br>3) Lack of personal involvement<br>4) Dailey's alleged conduct did not cause the alleged constitutional violation—*i.e.*, there is no "affirmative link" between Dailey and the constitutional violation alleged to have been committed by Golubski (or any other officer defendant);<br>5) Dailey is entitled to qualified immunity because:<br>a) Dailey did not violate Houcks' constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of Dailey's allegedly unlawful conduct. |
| | Count 5 -– Monell claim | 1) Statute of limitations<br>2) Statute of repose<br>3) Lack of an underlying violation by defendants Dailey, Swafford, Zeigler, Ware, Kill, and/or Bye;<br>4) Failure to allege nonconclusory facts the alleged violation by Golubski (or any other Defendant Officer) was caused by a custom, practice or policy of the Unified Government. |
| **Quinn** | Count 6 – Deprivation of liberty against Ware (and Golubski) | 1) Statute of limitations;<br>2) Statute of repose;<br>3) The alleged conduct of Ware—(participating in a suggestive or coercive photo lineup/identification) did not deprive Quinn of a liberty interest;<br>4) Ware is entitled to qualified immunity because:<br>a) Ware did not violate Quinn's constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of Ware's allegedly unlawful conduct. |
| | Count 7 Interference with familial relationship against Dailey, Swafford and Ware (and Golubski) | 1) Statute of limitations;<br>2) Statute of repose;<br>3) The alleged conduct of Dailey, Swafford, and/or Ware (a) is not alleged to have deprived Quinn of any constitutional right; and (b) is not alleged to have been directed at or intended to interfere with her familial relationship to Doniel Quinn;<br>4) Dailey, Swafford, and Ware are entitled to qualified immunity because:<br>a) they did not violate Quinn's constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of the allegedly unlawful conduct. |
| | Count 8 – Failure to | 1) Statute of limitations; |

| | | |
|---|---|---|
| | intervene against Dailey, Swafford, Zeigler, Ware, Kill and Bye | 2) Statute of repose;<br>3) The alleged conduct of Dailey, Swafford, Zeigler, Ware, Kill and/or Bye (a) are not alleged to have deprived Quinn of any constitutional right, (b) are not alleged to have observed or had reason to know about the alleged constitutional violation by Golubski and/or Ware, and (c) are not alleged to have had a realistic opportunity to intervene.<br>4) Dailey, Swafford, Zeigler, Ware, Kill and Bye are entitled to qualified immunity because:<br>a) they did not violate Quinn's constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of the allegedly unlawful conduct. |
| | Count 9 – Conspiracy against Dailey, Swafford, Zeigler, Ware, Kill and Bye | 1) Statute of limitations;<br>2) Statute of repose;<br>3) Lack of an underlying violation by defendants Dailey, Swafford, Zeigler, Ware, Kill and/or Bye;<br>4) Failure to allege specific facts showing (a) an agreement and concerted action among the defendants, (b) an agreement on a common, unconstitutional goal with concerted action undertaken to advance that unconstitutional goal, and/or (c) from acts furthering the conspiracy's purpose. |
| | Count 10 – Supervisor liability against Dailey and Swafford | 1) Statute of limitations;<br>2) Statute of repose;<br>3) Lack of personal involvement by ;<br>4) The alleged conduct of Dailey and/or Swafford did not cause the alleged constitutional violation—*i.e.*, there is no "affirmative link" between Dailey and/or Swafford and the constitutional violation alleged to have been committed by Golubski and/or Ware (or any other officer defendant);<br>5) Dailey and Swafford are entitled to qualified immunity because:<br>a) Dailey did not violate Quinn's constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of their allegedly unlawful conduct. |
| | Count 11 – Monell claim against the Unified Govvernment | 1) Statute of limitations<br>2) Statute of repose<br>3) Lack of an underlying violation by defendants Dailey, Swafford, Zeigler, Ware, Kill, and/or Bye;<br>4) Failure to allege nonconclusory facts the alleged violation by Golubski (or any other Defendant Officer) |

| | | |
|---|---|---|
| | | was caused by a custom, practice or policy of the Unified Government. |
| **Newsom** | Count 13[6] – Interference with familial relationship against Dailey, Swafford, and Ware (and Golubski) | 1) Statute of limitations;<br>2) Statute of repose;<br>3) The alleged conduct of Dailey, Swafford, and/or Ware (a) is not alleged to have deprived Newom of any constitutional right; and (b) is not alleged to have been directed at or intended to interfere with her familial relationship to Doniel Quinn;<br>4) Dailey, Swafford, and Ware are entitled to qualified immunity because:<br>a) they did not violate Newsom's constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of the allegedly unlawful conduct. |
| | Count 14 – Failure to intervene against Dailey, Swafford, Zeigler, Ware, Kill and Bye (and Golubski) | 1) Statute of limitations;<br>2) Statute of repose;<br>3) The alleged conduct of Dailey, Swafford Zeigler, Ware, Kill and/or Bye (a) is not alleged to have deprived Newsom of any constitutional right; and (b) are not alleged to have deprived Newsom of any constitutional right, (b) are not alleged to have observed or had reason to know about the alleged constitutional violation by Golubski, and (c) are not alleged to have had a realistic opportunity to intervene.<br>4) Dailey, Swafford, Zeigler, Ware, Kill and Bye are entitled to qualified immunity because:<br>a) they did not violate Newsom's constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of the allegedly unlawful conduct. |
| | Count 15 – Conspiracy against Dailey, Swafford, Zeigler, Ware, Kill and Bye (and Golubski) | 1) Statute of limitations;<br>2) Statute of repose;<br>3) Lack of an underlying violation by defendants Dailey, Swafford, Zeigler, Ware, Kill and/or Bye;<br>4) Failure to allege specific facts showing (a) an agreement and concerted action among the defendants, (b) an agreement on a common, unconstitutional goal with concerted action undertaken to advance that unconstitutional goal, and/or (c) from acts furthering the conspiracy's purpose. |
| | Count 16 – Supervisor | 1) Statute of limitations; |

[6] Count 12 is a claim by Plaintiff Newsom against Golubski for deprivation of liberty.

| | | |
|---|---|---|
| | liability against Dailey and Swafford | 2) Statute of repose;<br>3) Lack of personal involvement by ;<br>4) The alleged conduct of Dailey and/or Swafford did not cause the alleged constitutional violation—*i.e.*, there is no "affirmative link" between Dailey and the constitutional violation alleged to have been committed by Golubski and/or Ware (or any other officer defendant);<br>5) Dailey and Swafford are entitled to qualified immunity because:<br>a) Dailey and Swafford did not violate Quinn's constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of their allegedly unlawful conduct. |
| | Count 17 – Monell claim against the Unified Government | 1) Statute of limitations;<br>2) Statute of repose;<br>3) Lack of an underlying violation by any officer;<br>4) Failure to allege nonconclusory facts the alleged violation by any officer was caused by a custom, practice or policy of the Unified Government. |
| **Williams** | Count 18 – Deprivation of liberty against Zeigler (and Golubski | 1) Statute of limitations;<br>2) Statute of repose;<br>3) The alleged conduct of Zeigler did not deprive Plaintiff Williams of a liberty interest;<br>4) Zeigler is entitled to qualified immunity because:<br>a) Zeigler did not violate Plaintiff Williams' constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of the allegedly unlawful conduct. |
| | Count 19 – Interference with familial relationship against Dailey, Swafford, and Zeigler | 1) Statute of limitations;<br>2) Statute of repose;<br>3) The alleged conduct of Dailey, Swafford, and/or Zeigler (a) is not alleged to have deprived William of any constitutional right; and (b) is not alleged to have been directed at or intended to interfere with her familial relationship with Ronell and/or Donell Williams;<br>4) Dailey, Swafford, and Zeigler are entitled to qualified immunity because:<br>a) they did not violate Williams' constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of the allegedly unlawful conduct. |

| | | |
|---|---|---|
| | Count 20 – Failure to intervene against Dailey, Swafford, Ware, Kill and Bye | 1) Statute of limitations;<br>2) Statute of repose;<br>3) The alleged conduct of Dailey, Swafford Ware, Kill and/or Bye (a) is not alleged to have deprived Williams of any constitutional right; (b) are not alleged to have observed or had reason to know about the alleged constitutional violation by Golubski and/or Zeigler, and (c) are not alleged to have had a realistic opportunity to intervene;<br>4) Dailey, Swafford, Ware, Kill and Bye are entitled to qualified immunity because:<br>a) they did not violate Williams' constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of the allegedly unlawful conduct. |
| | Count 21 – Conspiracy against Dailey, Swafford, Zeigler, Ware, Kill and Bye (and Golubski) | 1) Statute of limitations;<br>2) Statute of repose;<br>3) Lack of an underlying violation by defendants Dailey, Swafford, Zeigler, Ware, Kill and/or Bye;<br>4) Failure to allege specific facts showing (a) an agreement and concerted action among the defendants, (b) an agreement on a common, unconstitutional goal with concerted action undertaken to advance that unconstitutional goal, and/or (c) from acts furthering the conspiracy's purpose. |
| | Count 22 – Supervisor liability against Dailey and Swafford | 1) Statute of limitations;<br>2) Statute of repose;<br>3) Lack of personal involvement by ;<br>4) The alleged conduct of Dailey and/or Swafford did not cause the alleged constitutional violation—*i.e.*, there is no "affirmative link" between Dailey and the constitutional violation alleged to have been committed by Golubski and/or Zeigler (or any other officer defendant);<br>5) Dailey and Swafford are entitled to qualified immunity because:<br>a) they did not violate Williams'constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of their allegedly unlawful conduct. |
| | Count 23 – Monell claim against the Unified Government | 1) Statute of limitations<br>2) Statute of repose<br>3) Lack of an underlying violation by any officer;<br>4) Failure to allege nonconclusory facts the alleged |

| | | |
|---|---|---|
| | | violation by any officer was caused by a custom, practice or policy of the Unified Government. |
| **Miller** | Count 24 – Deprivation of liberty against Kill and Bye | 1) Statute of limitations;<br>2) Statute of repose;<br>3) The alleged conduct of Kill and/or Bye did not deprive Plaintiff Miller of a liberty interest (does not allege the absence of probable cause);<br>4) Kill and Bye are entitled to qualified immunity because:<br>a) they did not violate Plaintiff Miller's constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of the allegedly unlawful conduct. |
| | Count 25 – Failure to intervene against Miller, Zeigler, and Ware (and Golubski) | 1) Statute of limitations;<br>2) Statute of repose;<br>3) The alleged conduct of Miller, Zeigler, and/or Ware are not alleged to have deprived Williams of any constitutional right; (b) are not alleged to have observed or had reason to know about the alleged constitutional violation by Kill and/or Bye, and (c) are not alleged to have had a realistic opportunity to intervene;<br>4) Dailey, Swafford, Ware, Kill and Bye are entitled to qualified immunity because:<br>a) they did not violate Williams' constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of the allegedly unlawful conduct. |
| | Count 26 – Conspiracy against Miller, Zeigler, Ware, Kill and Bye (and Golubski) | 1) Statute of limitations;<br>2) Statute of repose;<br>3) Lack of an underlying violation by defendants Dailey, Swafford, Zeigler, Ware, Kill and/or Bye;<br>4) Failure to allege specific facts showing (a) an agreement and concerted action among the defendants, (b) an agreement on a common, unconstitutional goal with concerted action undertaken to advance that unconstitutional goal, and/or (c) from acts furthering the conspiracy's purpose. |
| | Count 27 – Supervisor liability against Miller and Zeigler (and Golubski) | 1) Statute of limitations;<br>2) Statute of repose;<br>3) Lack of personal involvement by ;<br>4) The alleged conduct of Miller and/or Zeigler did not cause the alleged constitutional violation—*i.e.*, there is no "affirmative link" between Miller and/or Zeigler and |

| | | |
|---|---|---|
| | | the constitutional violation alleged to have been committed by Kill and/or Bye (or any other officer defendant);<br>5) Miller and/or Zeigler are entitled to qualified immunity because:<br>a) they did not violate Miller's constitutional rights, and<br>b) the right alleged to have been infringed was not clearly established at the time of their allegedly unlawful conduct. |
| | Count 28 – Monell claim against the Unified Government | 1) Statute of limitations<br>2) Statute of repose<br>3) Lack of an underlying violation by defendants Zeigler, Dailey, Swafford, Ware, Kill, and/or Bye;<br>4) Failure to allege nonconclusory facts the alleged violation by Golubski (or any other Defendant Officer) was caused by a custom, practice or policy of the Unified Government. |

**V. Conclusion**

Plaintiffs' claims against these defendants should be dismissed in their entirety for failure to state a claim upon which relief may be granted.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 SW 5th Street | Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cbranson@fpsslaw.com

**s/David R. Cooper**
David R. Cooper #16690
Charles E. Branson #17376
Attorneys for Defendants Unified Government of Wyandotte County and Kansas, City, Kansas; Thomas Dailey; James Swafford; Ronald Miller; Terry Zeigler, Michael Kill, Clayton and Dennis Ware

*-and-*

Daniel E. Kuhn, # 20429
Unified Government of Wyandotte
County/Kansas City, Kansas
Legal Department
701 N. 7th Street, Suite 961
Kansas City, Kansas 66101
dkuhn@wycokck.org
Tel: (913) 573-5060 | Fax: (913) 573-5243
Attorneys for Defendant Unified Government of
Wyandotte County and Kansas City, Kansas

**Certificate of Service**

I hereby certify that on January 16, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record:

William J. Skepnek, KS #10149 | THE SKEPNEK LAW FIRM, PA
1 Westwood Road | Lawrence, Kansas 66044
Tel: (785) 856-3100 | Fax: (785) 856-3099 | bskepneklaw.com

Frankie J. Forbes, KS #20725 | Quentin M. Templeton, KS #26666 | Anne C. Emert, KS #22144
FORBES LAW GROUP, LLC | 12900 Metcalf Avenue, Suite 210 | Overland Park, Kansas 66213
Tel: (913) 341-8600 | Fax: (913) 341-8606
fforbes@forbeslawgroup.com | qtempleton@forbeslawgroup.com | aemert@forbeslawgroup.com

Brennan P. Fagan, #20430 | Jennifer R. Johnson, #22096 | FAGAN & EMERT, LLC
800 New Hampshire Street, Suite 110 | Lawrence, Kansas 66044
Tel: (85) 331-0300 | Fax: (785) 331-0303 | bfagan@faganemert.com | jjohnson@faganemert.com
**Attorneys for Plaintiff**

s/David R. Cooper