IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHELLE HOUCKS, ET AL., ) | |
| ) | |
|     PLAINTIFFS, ) | |
| ) | |
| V. ) | CASE NO.: 2:23-CV-02489-TC-BGS |
| ) | |
| UNIFIED GOVERNMENT OF ) | |
| WYANDOTTE COUNTY AND KANSAS ) | |
| CITY, KANSAS, ET AL., ) | |
| ) | |
|     DEFENDANTS. ) | |

**PLAINTIFFS' OPPOSITION TO GOLUBSKI'S MOTION TO DISMISS**

Plaintiffs Michelle Houcks, Saundra Newsom, Niko Quinn, Ophelia Williams, and Richelle Miller, by and through their attorneys, allege:

### INTRODUCTION

The Constitution is clear: Golubski cannot use his police badge as a license to hunt and rape Black women with impunity. Kansas law is similarly clear: Golubski cannot benefit from threatening Plaintiffs that **if they complained** about his tortious conduct, they or their family would be **killed**, **harmed**, or have **false convictions pinned** on them. Golubski violated Plaintiffs' clearly established constitutional rights. But he nevertheless claims that Plaintiffs' detailed, 132-page, 537-paragraph Complaint does not contain a single viable claim against Golubski. His argument? Because his threats to Plaintiffs were *so* successful, Plaintiffs refused to come forward and file a lawsuit to vindicate Golubski's now well-documented *and federally indicted* criminal and constitutional violations within 2 years. Golubski is begging the Court to sanction and approve of his rampant sexual proclivities and abuse of the very humans he was sworn to serve and protect. The Constitution, case law, and common sense demand justice for his victims.

1

**ARGUMENT AND AUTHORITIES**

I. **Standard of Review: The Complaint alleges plausible claims sufficient to survive a Rule 12(b)(6) Motion to Dismiss.**

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, Plaintiffs' Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Applying this standard involves "two working principles." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). *First*, the Court ignores "'labels and conclusions[,]'" "'formulaic recitation of the elements[,]'" and legal conclusions. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *Second*, the Court accepts all remaining allegations and logical inferences as true, asking only whether Plaintiffs alleged facts making their claim plausible. *Id.* at 678–79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,'" but instead just asks the claimant to plead facts—viewed in the light most favorable to it—alleging "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The detailed Complaint meets this standard.

II. **Attempts to modify the Complaint and limit its tolling facts to "duress" are not a basis to dismiss the Complaint.**

Golubski implies that Kansas law prohibits tolling of the statute of limitations. This simply isn't true. To get there, Golubski first tries to manipulate Plaintiffs' own Complaint to limit the pleaded allegations to only "duress." Then Golubski claims duress is not a basis in Kansas law for tolling *or* equitable estoppel. This strategy fails for elementary reasons.

First, Plaintiffs are the masters of their Complaint, *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013), and they control the Complaint's language, not Golubski. There is no legal mechanism for Golubski to redraft the Complaint in an ill-fated attempt to create strawmen arguments. Second, Golubski's argument – that *P.W.P. v. L.S.*, 969 P.2d 896, 904 (Kan. 1998) abolished duress as a basis for tolling a statute of limitations – has already been considered <u>and rejected</u> by the District of Kansas. *Keith v. Werholtz*, No. CIV.A. 11-2281-KHV, 2012 WL 1059858, at *5 (D. Kan. Mar. 28, 2012), *aff'd sub nom. Keith v. Koerner*, 707 F.3d 1185 (10th Cir. 2013). In *Keith*, Judge Vratil rejected the very argument Golubski raises here, in part, because *P.W.P.* (1) was decided at summary judgment, not a motion to dismiss; and (2) the district court relied on expert testimony to find the plaintiff was not under duress. "The Court takes this to mean that in proper cases, duress which essentially qualifies as a separate constitutional violation could justify tolling. The Court therefore overrules defendants' motion on statute of limitations grounds." *Id.* (internal citations omitted). The same result should apply here.

And Plaintiffs have pleaded sufficient facts to justify applying tolling at the motion to dismiss stage. Like *Keith*, Plaintiffs have spent significant time in their detailed Complaint addressing the tolling issue. In fact, an entire heading is dedicated *exclusively* to how Defendants' conduct tolled any applicable statute of limitations. Doc. 1 at ¶¶ 254–276. Because the Court must presume these facts as true at this stage of the litigation, Plaintiffs have more than adequately overcome the minimal motion to dismiss hurdle.

Golubski's citation to an out of district, unreported 2013 case lamenting "a generalized fear of reprisal" is belied by the excruciating detail and documented fear Plaintiffs possess over Defendants and Golubski specifically. "[N]o man may take advantage of his own wrong." *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959). And the detailed wrongs, including

3

Plaintiffs' "reliance upon Defendants' representations and conduct" that "if they pursued their claims, they and their family would be harmed, killed, or set up for a criminal matter for which they were innocent, or that Defendants would interfere with Plaintiffs' and their families' criminal matters," is more than enough to require the Court to prevent Defendants, including Golubski, from benefiting from their wrongs. Doc. 1 at ¶ 259.

### III. Tolling of the statute of limitations is a fact question.

Golubski concedes that Kansas law determines whether Plaintiffs are entitled to tolling. Doc. 18 at 11.[1] Despite this critical, yet undeniable, concession, Golubski routinely looks not just out of Kansas, but outside the Tenth Circuit altogether to unreported foreign district courts in his efforts to invent legal hurdles that simply do not exist under Kansas law.

Under Kansas law, "[w]hether equitable estoppel applies involves a question of fact." *L. Ruth Fawcett Tr. v. Oil Producers Inc. of Kan.*, 507 P.3d 1124, 1144 (Kan. 2022) (reversing district court's post-discovery 12(b)(6) dismissal); *Gas Serv. Co. v. Consol. Gas Utilities Corp.*, 65 P.2d 584, 584 (Kan. 1937) (holding equitable estoppel "must depend on its own facts"). This is well established. *Bistline v. Parker*, 918 F.3d 849, 883–84 (10th Cir. 2019) (noting other cases in reversing district court's 12(b)(6) dismissal for "claims on statute of limitations grounds as a matter of law"); *Dunn v. Dunn*, 281 P.3d 540, Syl. ¶ 8 (Kan. Ct. App. 2012) ("Equitable estoppel generally involves questions of fact and, when the facts are disputed or when necessary facts come from ambiguous documents, summary judgment is inappropriate and the factual dispute must await resolution at trial"). Where a defendant, by deception or in violation of his duty to plaintiff, caused a plaintiff to subject her claim to a statutory bar, the defendant wrongfully obtained an advantage

---

[1] Golubski erroneously attributes his quote to *Braxton v. Zavaras*, 614 F.3d 1156 (10th Cir. 2010). However, the language Golubski quotes is from *Keith v. Koerner*, No. 11-CV-2281-DDC-JPO, 2014 WL 6473222, at *11 (D. Kan. Nov. 18, 2014), where Judge Crabtree cites *Braxton*.

and must be estopped from asserting a statute of limitations defense. *Rockers v. Kan. Tpk. Auth.*, 991 P.2d 889, 894–95 (Kan. 1999) (quoting *Klepper v. Stover*, 392 P.2d 957, 959 (Kan. 1964)).

Kansas's fact-intensive analysis of equitable estoppel applies where "another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed…[and]… the party reasonably relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *L. Ruth*, 507 P.3d at 1144 (internal quotation omitted). Each of these elements is pleaded in the Complaint. First, Defendants acted, represented, admitted, or remained silent when they had a duty to speak. Doc. 1 at ¶¶ 256–257; 266. Second, this conduct induced Plaintiffs to believe certain facts existed. Doc. 1 at ¶¶ 257; 264–265. Plaintiffs reasonably relied and acted upon such belief. Doc. 1 at ¶¶ 259–260; 267. Finally, Plaintiffs would now be prejudiced if Defendants were permitted to deny the existence of such facts. Doc. 1 at ¶¶ 268–269. This is more than adequate to overcome Golubski's attempt to dismiss the Complaint at this early juncture.

Later, Golubski argues about whether tolling should estop the running of the statute of limitations. Doc. 18 at 17–25. Golubski devoting nearly a third of his brief to this issue only underscores the fact-intensive nature of the inquiry. His entire argument boils down to claiming, based on facts outside the Complaint, that Plaintiffs publicly discussed their allegations more than two years before filing suit, in conflict with the Complaint's tolling facts. For example, he finds it "notable" that Quinn denied Golubski physically assaulted her when asked in November 2021 during the McIntyre litigation. Doc. 18 at 19 n.14. This *proves* Quinn remained fearful <u>even in November 2021</u>. Similarly unhelpful to his argument, Golubski claims Houcks went public in October 2021 with a *Kansas City Star* article that Golubski accurately describes as "anonymized." Doc. 18 at 20. Golubski next claims, without any authority and beyond the contents of the

5

Complaint, that Williams "broke her silence" when she testified in the McIntyre litigation. *Id.* at 20. Of course, these facts are matters outside the pleadings that the Court can't consider at a motion to dismiss stage. And in any event, all Golubski manages to cite is a deposition notice. Finally, Golubski claims Newsom testified in McIntyre's exoneration hearing. Tellingly missing are facts showing that Newsom discussed the allegations in this case, including sexual harassment and Golubski's role in enabling her son's murder for payment. Because there are none. These issues are emblematic of Golubski's erroneous logic. The Court must accept the Complaint's allegations and logical inferences as true at this stage. *Kan. Motorcycle Works USA, LLC v. McCloud*, 596 F. Supp. 3d 1112, 1117 (D. Kan. 2021). Therefore, Golubski simply cannot dismiss away the Complaint's *one hundred and thirty-two pages* of factual allegations. And he even goes a step further, inverting the standard and drawing inferences from the Complaint's facts, or purported facts outside of the Complaint, in favor of Golubski himself. His encouraging the Court to do so is inviting clear error.

Plaintiffs' fears, as described throughout the Complaint, are not surprising to Golubski. Nor are their practical effects. As detailed in the Complaint, Golubski intended to prevent Plaintiffs from ever raising an objection to his heinous conduct. His and the other Defendants' conduct forms the factual basis for equitably tolling the statute of limitations. In Golubski's rape case, the Government has repeatedly detailed the fear Golubski intentionally created to prevent Plaintiffs from pursuing their claims over decades. *See, e.g.*, Motion for Detention, *United States v. Golubski*, No. 5:22-cr-40055-TC (D. Kan. Sept. 16, 2022), ECF No. 10 at 22. The fear Golubski intentionally created was also the basis for Magistrate Schwartz's denial of his release from home detention. Order, *Golubski*, No. 5:22-cr-40055-TC (D. Kan. Jan. 18, 2023), ECF No. 22 at 6 ("[M]any of the alleged witnesses have intentionally moved residences and have kept their new

6

home information private out of fear of what could happen if…known by [Golubski]. Setting up zones, which would contemporaneously notify [Golubski] when he was near those witnesses, would create new and additional risks to the safety of individuals in the community."). Accepting the Complaint's facts and drawing logical inferences in favor of Plaintiffs, the statute of limitations is not a basis for dismissal.

### IV. K.S.A. 60-513 is not a bar to tolling.

Golubski devotes nearly three full pages to quibbling over what year he raped various Plaintiffs. Doc. 18 at 12–14. This is apparently designed to establish each Plaintiff's knowledge of their claims. But this confuses equitable tolling with equitable estoppel. "[A]lthough the doctrines of equitable tolling and equitable estoppel are often confused, the better reasoning states that equitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit." *Est. of Amaro v. City of Oakland*, 653 F.3d 808, 814 (9th Cir. 2011). The equitable tolling strawman is repeated later. Doc. 18 at 18–21.[2]

And it is well established that § 1983 claims are subject to equitable estoppel. *Est. of Knight ex rel. Knight v. Hoggard*, No. 98-1778, 98-1847, 1999 WL 390987, at *4–5 (4th Cir. 1999) (evaluating equitable estoppel of § 1983's statute of limitations *post trial*); *Amaro*, 653 F.3d at 815 (answering certified question that equitable estoppel applies to § 1983 where plaintiff—even aware of her claim—is "dissuaded from bringing the claim by affirmative misrepresentations and stonewalling by the police"). Indeed, the United States Supreme Court has repeatedly held that statutes of limitations are subject to a "rebuttal presumption in *favor* of equitable tolling." *Holland*

---

[2] In the later attempt, Golubski invites the Court to reweigh pleaded facts and ignore the Complaint's detailed description of Plaintiffs' continued fear and threats which "have not lessened over time." *See, e.g.*, Doc. 1 at ¶¶ 273–276.

7

*v. Florida*, 560 U.S. 631, 645–46 (2010) (quotations and citations omitted); *accord Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are 'customarily subject to "equitable tolling[.]"'").

Golubski also attempts to create a new self-serving hurdle to Kansas's equitable estoppel case law. He claims that *Dunn v. Dunn*, 281 P.3d 540 (Kan. Ct. App. 2012) requires a defendant to mislead a plaintiff into believing she need not file suit, and that her rights would not be lost. Doc. 18 at 22. Golubski's reliance on *Dunn* is a curious one. *Dunn* is a contract, not a tort, case.[3] Moreover, *Dunn* admonishes that "[b]ecause the basis for invoking the doctrine of equitable estoppel is so very fact intensive, it is important that we understand the factual context in which various pronouncements about equitable estoppel have been made in cases having something to say about the issue before us," and "it does not appear that the estoppel principle has been applied with steadfast consistency over the years." 281 P.3d at 549. Yet despite this warning, Golubski invites the Court to superficially and erroneously invent formulaic tests. *Steckline Commc'ns, Inc. v. J. Broad. Grp. of Kan., Inc.*, 388 P.3d 84, Syl. ¶ 4 (Kan. 2017) ("Courts should…abstain from applying [estoppel] in a formulaic manner."). This includes Golubski's incredible request that the Court declare that Kansas approves of police officers who rape citizens *at gun point*, and threaten them and their families' lives if they tell anyone. According to Golubski, those allegations, if proven after discovery, cannot, as a matter of law, result in liability. Fortunately, Kansas law is not so draconian.

And Golubski's advocacy of draconian law doesn't stop there. He claims—again without a single citation to Kansas (or even Tenth Circuit) authority—that equitable estoppel requires

---

[3] Although *Dunn* contained a fiduciary duty claim, there was controversy over whether the claim was tort or contract based. But this issue was not resolved because the court found the uncontroverted facts evidenced a lack of a fiduciary relationship. 281 P.3d at 556.

8

actions beyond the facts of the underlying claim. This is not the law in Kansas, and Golubski cites no authority for his claim. Moreover, the Complaint's bases to estop Golubski from asserting a statute of limitations affirmative defense are not the facts underlying Plaintiffs' claims. *See, e.g.*, Doc. 1 at ¶¶ 257(a)–(n); 264(a)–(e); 269(a)–(h). The allegations in these paragraphs go beyond Golubski's rape of Houcks, Williams, and Quinn; sexual assault of Newsom and murder of her son; and forced perjury of Quinn.

Golubski also argues that **fraud**ulent concealment only tolls a statute of limitations for a claim grounded in **fraud**. Doc. 18 at 24. Like Golubski's prior strawmen, this is irrelevant here. "Fraudulent concealment" isn't located anywhere in the Complaint. Instead, Golubski's concealment of his tortious conduct is yet another basis to equitably estop him from asserting a statute of limitations defense. *Glus*, 359 U.S. at 232 ("[N]o man may take advantage of his own wrong."). And regardless of the number of times Golubski tries to distract, Plaintiffs' knowledge that Golubski raped them is immaterial to estoppel of the statute of limitations affirmative defense.

Kansas's fact-intensive analysis of equitable estoppel applies where "another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed. The party asserting estoppel must also show that the party reasonably relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *L. Ruth*, 507 P.3d at 1144 (internal quotation omitted). Each of these elements is pleaded in the Complaint. First, Defendants acted, represented, admitted, or remained silent when they had a duty to speak. Doc. 1 at ¶¶ 256–257; 266. Second, this conduct induced Plaintiffs to believe certain facts existed. Doc. 1 at ¶¶ 257; 264–265. Plaintiffs reasonably relied and acted upon such belief. Doc. 1 at ¶¶ 259–260; 267. Finally, Plaintiffs would now be prejudiced if Defendants were permitted to deny the existence of such

9

facts. Doc. 1 at ¶¶ 268–269. This is more than adequate to overcome Golubski's attempt to dismiss the Complaint at this early juncture.

V. **Kansas's statute of repose doesn't apply to Plaintiffs' § 1983 claims.**

Golubski asserts that K.S.A. 60-513(b)'s 10-year statute of repose bars each of the Complaint's Counts alleging federal civil rights violations under 42 U.S.C. § 1983.[4] To support this argument, Golubski disingenuously asserts that "the Tenth Circuit has indicated that state statutes of repose apply to § 1983 claims." Doc. 18 at 16. His two unpublished case citations simply don't support that contention.[5] Contrary to Golubski's misstatement, the Tenth Circuit has never addressed whether a state statute of repose applies to federal civil rights claims. However, the majority of courts that have addressed the question—including an unpublished opinion from the District of Kansas—have held that state statutes of repose don't apply to federal civil rights claims. *See Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1219 (11th Cir. 2001) (holding Alabama's judicially created rule of repose did not apply to bar §§ 1981 and 1982 claims); *Blackmon v. Holder*, No. 5:20-CV-524-FL, 2021 WL 2877902, at *5 (E.D.N.C. July 8, 2021) (recognizing that "several courts have declined to apply state statutes of repose to federal claims" because "unlike statutes of limitations, statutes of repose are rare in federal statutory schemes[,]" finding the "line of reasoning" in those cases "persuasive," and concluding "North Carolina statute of repose does

---

[4] Each of the Complaint's 28 Counts alleges federal civil rights violations under 42 U.S.C. § 1983. Doc. 1 at ¶¶ 287–536.

[5] *See Eikenberry v. Seward Cnty., Kan.*, 734 F. App'x 572, 576 (10th Cir. 2018) (rejecting pro se plaintiff's argument that district court should have applied ten year statute of limitations to § 1983 claim based on statute of repose (instead of two year statute of limitations period) and explaining—generally—"[w]hen triggered," statute of repose's "outer cap of ten years serves to *limit*—not *extend*—the time period for the plaintiff to sue" but never addressing whether statute of repose applies to § 1983 claims); *see also Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 162 F. App'x 823, 824 (10th Cir. 2006) (reversing district court's dismissal of § 1983 claims as time-barred and noting—in dicta—that pro se plaintiff had filed claims after K.S.A. 60-515's statute of repose had expired but with the Court explicitly "[a]ssuming § 60-515 applies" but never addressing whether statute of repose bars § 1983 claims (emphasis added)).

not apply to plaintiff's § 1983 claims"); *Chapman v. Rhoney*, No. 1:10CV258, 2012 WL 1944863, at *3 (W.D.N.C. May 30, 2012) (holding North Carolina's statute of repose did not apply to § 1983 claims); *Lowery v. Cnty. of Riley*, No. 04-3101-JTM, 2005 WL 1242376, at *5 (D. Kan. May 25, 2005) (applying "the Eleventh Circuit's reasoning in *Moore*" to hold that K.S.A. 60-513(b)'s statute of repose did not apply, and thus did not bar, plaintiff's § 1983 claim); *Craft v. Vanderbilt Univ.*, 18 F. Supp. 2d 786, 798 (M.D. Tenn. 1998) (holding Tennessee's statute of repose did not apply to §§ 1983 and 1985 claims).

In the District of Kansas case, Judge Marten observed that the "general rule is that a federal civil rights action is subject to the state statute of limitations, *but not the state statute of repose*." *Lowery*, 2005 WL 1242376, at *3 (emphasis added) (first citing *Sheets v. Lindsey*, 783 F. Supp. 577, 578–579 (D. Utah 1991); then citing *Moore*, 267 F.3d 1209). He noted that defendants hadn't cited "a single case which applies a statute of repose to a federal civil rights case."[6] *Id.* at *5. And, Judge Marten concluded, based "on the Eleventh Circuit's reasoning in *Moore*, it would be inappropriate to apply [K.S.A. 60-513(b)'s] ten year limitation to this case" because in "federal

---

[6]  Similarly, here, Golubksi doesn't cite a single case that applied a state's general statute of repose to bar federal civil rights claims. Golubski cites a recent Georgia case that purportedly held that "Georgia's statute of repose should apply to a § 1983 claim" but the facts of the case are much more nuanced than Golubski describes. Doc. 18 at 16 n.12 (citing *Talley v. City of LaGrange, Ga.*, No. 4:23-CV-32 (CDL), 2023 WL 8114369 (M.D. Ga. Nov. 22, 2023)). In a case issued less than three months ago, *Talley* considered whether "Georgia's survivorship law" which permits "a plaintiff to bring a § 1983 action even if the alleged wrongdoer has died" but also "extinguishes such claims six years after the wrongdoer's death" applied to bar plaintiff's § 1983 claim brought against deceased wrongdoers. *Id.* at *6. The Georgia court held that it did. *Id.* (finding that "the Georgia survivorship law—including its statute of repose—should apply in this case").

Importantly, the Georgia federal court didn't apply "a general statute of repose[,]" like Golubksi seeks to do here by applying K.S.A. 60-513(b) to bar Plaintiffs' § 1983 claims. *Id.* Instead, the court applied Georgia's survivorship statute to allow a plaintiff to assert § 1983 claims against deceased defendants but also found that it "must also apply the [survivorship statute's] related statute of repose for actions against estates." *Id.* Thus, the facts of *Talley* don't apply to the facts here. Also, because the court applied both the Georgia survivorship statute's right to bring an action against a deceased defendant along with its statute of repose, *Talley* differs markedly from the line of cases that have refused to apply general state statutes of repose against federal civil rights claims.

11

civil rights cases, statutes of repose are not universally familiar aspects of federal litigation or indispensable to any scheme of justice[,]" and thus "a lack of a statute of repose cannot be considered a deficiency in the federal civil rights statute." *Id.* And federal law must be found to be deficient before the Court is permitted to evaluate state common law. 42 U.S.C. § 1988(a). The very same analysis applies to Golubski's identical statute of repose argument. The Court should follow the overwhelming weight of authority—including Judge Marten's opinion in *Lowery*—and hold that Kansas's statute of repose doesn't apply here to bar any of Plaintiffs' § 1983 claims.

## VI. Even if there were a question of estoppel, Congress expressly abolished statute of limitations for constitutional violations in the Civil Rights Act of 1871.

Golubski's entire statute of limitations argument is premised on a scrivener's error from 1874. This case enables the judiciary to fix over a century of case law that is clearly erroneous in light of Congress's actual (albeit previously lost) unambiguous statute. It is undeniable that § 1983, as approved by Congress, included the "Notwithstanding Clause," providing that constitutional violations were redressable "any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding." Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13 (1871). It is also undeniable that this language was impermissibly (and perhaps intentionally by pro-Southern Johnson holdovers) omitted from the first formal codification of federal law during the Grant administration.

Federal case law relying on a forum state's personal injury statute of limitations has existed for less than 40 years, *Wilson v. Garcia*, 471 U.S. 261 (1985), far from the "over a century of precedent" Golubski laments. Doc. 18 at 10. Indeed, it was the *Wilson* majority who left "behind a century of precent" "with hardly a backward look." 471 U.S. at 283 (O'CONNOR, J., dissenting). Instead, since 1830, federal courts adopted the forum state's statute of limitations of the most closely analogous state-law claim…." *Id.* at 280. Federal courts believed that because Congress

12

failed to address statutes of limitations, § 1988's prescription to turn to state law where federal law was silent resolved the matter. *Id.* at 281. But that understanding was all based on an erroneous version of Congress's law.[7]

As Congress's original language—Notwithstanding Clause intact—makes clear, all state laws purporting to limit § 1983 are expressly preempted, thereby rendering state statutes of limitations (and statutes of repose) without effect. And this makes sense; state officials are obligated to take an oath to support the Constitution because they "have an essential agency in giving effect to the federal Constitution." Federalist No. 44 (J. Madison). Their constitutional violations should receive no protection, lest citizen (and State) rights to redress constitutional violations be limited to violence and war. *See* Federalist No. 27 (A. Hamilton). As a result, Golubski's "red herring" threat is simply wrong.

Given the historical need for § 1983 (southern states' refusals to enforce reconstruction's rights to *all* citizens) allowing each State to create its own statute of limitation ensures judicially-mandated discrimination between citizens of different states, violating the Fifth Amendment's Due Process Clause and the Fourteenth Amendment's Equal Protection Clause.[8] But "[t]o the extent the Reconstruction Congress even contemplated" a statute of limitation defense "would apply to the Civil Rights Act of 1871, the Notwithstanding Clause would have sufficed to assuage those

---

[7] The Reviser was not authorized to make substantive changes to or alter the scope of Congress's laws. *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 510 (1939) (stating River's changes were "not intended to alter the scope" of § 1983); Revised Statutes of the United States, Preface, at v (1878) (stating Reviser had no authority to make substantive changes); A Act to Provide for the Preparation and Publication of a New Edition of the Revised Statutes of the United States, 19 Stat. 268, ch. 82, § 4 (1877), as amended by 20 Stat. 27, ch. 26 (1878) (stating revised statutes are "legal" evidence of laws, but not "conclusive").

[8] *Compare* Tenn. Code. Ann. § 28-3-104 (one-year in Tennessee) *with* K.S.A. 60-513 (two-years in Kansas) *with* Ark. Code Ann. § 16-56-105 (three-year in Arkansas) *with* Fla. Stat. § 95.11 (four-years in Florida) *with* Mo. Rev. Stat. § 516.120 (five-years in Missouri) *with* Me. Stat. tit. 14, § 752 (six-years in Maine).

13

concerns." Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev. 201, 236 (2023).

Despite Golubski's plea, this does not require the Court to "overrule the Supreme Court." Nothing in *any* Supreme Court or Court of Appeals case, reported or otherwise, states that statute of limitations apply to § 1983 despite the Notwithstanding Clause. As a result, the Court is not asked to "overrule" anything. The Court is making a legal ruling based on an unambiguous law in a case of first impression. This is precisely the Court's role and what it's asked to do with new statutes and regulations all the time. Indeed, Congress has already addressed this. 1 U.S.C. § 204(a) (providing Revised Statutes are merely prima facie evidence of the law and can be rebutted by pointing to the originally enacted version).

## VII.   Williams's Counts 19 & 20 are not collateral attacks on her sons' convictions, and are therefore not barred by the *Heck Doctrine*.

Golubski claims that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Williams's Count 19—Interference with Familial Relationships—and Count 20—Failure to Intervene. But the Tenth Circuit has cautioned against applying *Heck* in "blanket" fashion. *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). Instead, claims must be independently evaluated and *Heck* only applies if the claim's success **standing alone** would "demonstrate the invalidity of any criminal judgment against **the plaintiff**…" *Id.* (emphasis added). Even if *Heck* applied to a nonparty's conviction (which Golubski fails to provide any authority to establish), there is nothing about a familial association claim that would require Williams to prove the invalidity of any non-party's conviction. Her claim is personal, and as such, is unaffected by *Heck* because success of her claim certainly would not have demonstrated invalidity of her non-party sons' convictions. *See Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (discussing that § 1983 suits are personal).

14

This authority and argument are not a surprise to Golubski. He made **the exact same argument** in the McIntyre litigation that Williams does here. Memorandum in Support of Motion to Dismiss, *McIntyre v. Unified Government*, No. 2:18-cv-02545-KVH (D. Kan. Oct. 18, 2019), ECF No. 114 at 2–3. And although he was wrong then—as it applied to the statute of limitations—Golubski's prior description of the law is right now. For example, Count 19 points to Golubski's lies about her children's location when he sat in her living room and sexually harassed her and her daughter. Doc. 1 at ¶ 452. Count 19 also points to the wrongful detention and arrest of Williams's sons. Doc. 1 at ¶ 458. Such a claim was *expressly* noted by *Heck* as a valid § 1983 suit absent reversal of a criminal conviction. *Heck*, 512 U.S. at 487 n7.

Meanwhile, Golubski's attempted attack on Count 20 completely misses the target; Golubski isn't even a defendant to Count 20. To the extent he meant Count 21, that argument similarly fails, because Count 21 is based on violations of Williams's rights under the First, Fourth, Thirteenth, and Fourteenth Amendments. Even if Golubski were right about *Heck*'s application to Williams's son's convictions (and he isn't), it still wouldn't result in dismissal of Count 21.

### VIII. Miller's Counts 25 & 27 are not subject to dismissal because the Complaint plausibly alleges a § 1983 failure to intervene and supervisory liability claim against Golubski.

#### A.   Count 25 is not subject to dismissal.

Golubski argues the Court should dismiss him from Count 25 because Plaintiff did not see Golubski at her 19-hour unconstitutional interrogation, implying he must be present during unconstitutional conduct to incur liability for his failures to intervene. Doc. 18 at 27. But that is not the law. Instead, an officer may either observe **or have reason to know** of constitutional violations. *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue

of fact for the jury…." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). Here, Plaintiffs claim that Golubski—a serial constitutional violator himself—knew of the Protection Racket's rampant constitutional violations, but he failed to stop it. Far from it, Golubski willingly participated in repeated constitutional violations, which led, in part, to Miller's unconstitutional interrogation. Doc. 1 at ¶¶ 34–44. This is sufficient to create the factual issue necessary to engage in discovery and present to a jury for its decision on the question whether Golubski knew of the unconstitutional interrogation and whether he could have intervened to stop it.

### B.    Count 27 is not subject to dismissal.[9]

Golubski argues that the Complaint's Count 27 fails to allege a plausible § 1983 claim against him based on supervisor liability. To make such a claim, a plaintiff must allege an "affirmative link" between the defendant supervisor and the constitutional violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)). A "'supervisor's mere knowledge of his subordinate's' conduct" doesn't establish the requisite "affirmative link." *Id.* (quoting *Iqbal*, 556 U.S. at 677). Instead, a plaintiff must allege three requirements: (1) personal involvement; (2) causation; and (3) state of mind. *Id.* The Complaint satisfies all three requirements here to assert Count 27's supervisory liability claim against Golubski.

*First*, Plaintiffs have alleged personal involvement by Golubski to hold him liable as a supervisor under Count 27. The Complaint alleges that Golubski supervised Kill and Bye during the relevant time frame, and it alleges facts—taken as true and viewed in Plaintiffs' favor—that support a plausible finding or inference that Golubski "create[d], promulgate[d], implement[ed],

---

[9]    The heading in Golubski's brief mistakenly refers to a "Supervisory Liability Claim (Count 28)" but the first line of the argument section makes clear that this claim is Count 27 in the Complaint. Doc. 18 at 27.

16

or in some other way possesse[d] responsibility for the continued operation of a policy" that deprived Plaintiffs of their constitutional rights.[10] *Dodds*, 614 F.3d at 1199.

*Second*, Plaintiffs have alleged facts supporting a plausible finding or inference of causation.[11] *And third*, Plaintiffs have alleged facts from which a reasonable trier of fact could infer that Golubski had the requisite state of mind—*i.e.*, "meaning the supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur."[12] *Dodds*, 614 F.3d at 1196 (citation and internal quotation marks omitted). Thus, the Complaint alleges a plausible § 1983 supervisory claim against Golubski in Count 27.

## IX. Quinn's Count 7 is not subject to dismissal because the Complaint plausibly alleges § 1983 interference with familial relationships based on the threats to take her children away unless she perjured herself.

Golubski concedes the Complaint alleges an (1) intent to interfere with Quinn's family relationship; and (2) an unwarranted and severe intrusion. Doc. 18 at 29. Instead, Golubski complains about what he calls "inconsistent factual allegations as to who made the threat that Quinn's children would be taken away." *Id.* The Complaint—covering *years*—contains multiple threats over Quinn's children. But Paragraph 344 could not be clearer—and prevents Count 7's dismissal: "Golubski and Ware threatened Quinn that if she refused to commit perjury, Quinn's

---

[10]  *See* Doc. 1 at ¶ 518 (alleging that Golubski supervised Kill and Bye); *see also id.* at ¶ 37 (alleging that "Golubski used his powers and privileges as a police detective to manage the Protection Racket's operation"); *id.* at ¶¶ 43, 48, 50, 54, 203, 206–21, 243 (describing Golubski's supervisory responsibilities and his responsibility for continued operation of unconstitutional policies).

[11]  *See* Doc. 1 at ¶¶ 194 & 518 (alleging that "constitutional violations against Plaintiffs were not anomalous or isolated acts of misconduct" but instead "resulted directly from the Unified Government's customs, policies, or practices," that Golubski—as a supervisor of Kill and Bye—"promulgated, created, implemented, or utilized" and "that caused the deprivation of Miller's constitutional rights, all as explained in greater detail" in other portions of the Complaint); *see also id.* at ¶¶ 39, 195–98, 521.

[12]  *See, e.g.*, Doc. 1 at ¶¶ 213, 232–33, 519 (alleging that Golubski acted knowingly or with deliberate indifference).

children would be taken away and Quinn would be falsely imprisoned." Doc. 1 at ¶ 344. Full stop, this ends this inquiry, regardless of what Morehead *or Golubski* might have threatened elsewhere.

Incredibly, Golubski actually argues that because Quinn perjured herself and therefore Golubski did not take away her children, that Golubski's threats were not an "unwarranted and severe intrusion." Doc. 18 at 30. This, of course, defies logic. As the Complaint expressly describes, "As a result of [Golubski's] unlawful and intentional actions, Quinn lived in constant fear that her children would be unlawfully taken from her if she failed at any time to acquiesce to [Golubski's] demands. As a result, Quinn was denied her **full rights** of familial association with her children." Doc. 1 at ¶ 347 (emphasis added). The Constitution prohibits Golubski from interfering with Quinn's relationship with her children. This protection is absolute, and is "the oldest of the fundamental liberty interests recognized by the Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Golubski's partial interference with Quinn's relationship with her children is a complete violation of her Constitutional rights. As a result, Count 7 is not subject to dismissal.

## CONCLUSION

Based on the foregoing, Plaintiffs' Complaint alleges plausible claims for relief against Golubski sufficient to survive a Rule 12(b)(6) Motion to Dismiss. Thus, Plaintiffs request that the Court deny Golubski's Motion to Dismiss and order any further relief the Court deems just and equitable.

Respectfully submitted,

*/s/ William J Skepnek*
William J. Skepnek   KS Bar #10149
THE SKEPNEK LAW FIRM, PA
1 Westwood Rd.
Lawrence, KS 66044
Telephone:   (785) 856-3100
Facsimile:   (785) 856-3099
bskepnek@skepneklaw.com

| */s/ Quentin M. Templeton* | */s/ Brennan P. Fagan* |
|---|---|
| Frankie J. Forbes   KS Bar #20725 | Brennan P. Fagan   KS Bar #20430 |
| Quentin M. Templeton  KS Bar #26666 | FAGAN & EMERT, LLC |
| Anne C. Emert   KS Bar #22144 | 800 New Hampshire Street, Suite 110 |
| FORBES LAW GROUP, LLC | Lawrence, Kansas 66044 |
| 12900 Metcalf Avenue, Suite 210 | Telephone:   (785) 331-0300 |
| Overland Park, Kansas 66213 | Facsimile:   (785) 331-0303 |
| Telephone:   (913) 341-8600 | bfagan@faganemert.com |
| Facsimile:   (913) 341-8606 | |
| fforbes@forbeslawgroup.com | |
| qtempleton@forbeslawgroup.com | |
| aemert@forbeslawgroup.com | |

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I certify that on February 2, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which sent a notice of electronic filing to all counsel of record:

| FISHER, PATTERSON, SAYLER, & SMITH, LLP | ENSZ & JESTER, P.C. |
|---|---|
| David R Cooper (dcooper@fpsslaw.com) | Chris Napolitano (cnapolitano@enszjester.com) |
| Charles E Branson (cbranson@fpsslaw.com) | 1100 Main Street, Suite 2121 |
| 3550 SW 5th Street | Kansas City, Missouri 64105 |
| Topeka, Kansas 66606 | (Counsel for Golubski) |
| (Counsel for Unified Government, Dailey, Swafford, Miller, Zeigler, Kill, Bye, Ware) | |
| | |
| SHAFFER LOMBARDO SHURIN | MCCAULEY & ROACH, LLC |
| Dawn Parsons (dparsons@sls-law.com) | Morgan Roach (morgan@mccauleyroach.com) |
| Peter Rottgers (prottgers@sls-law.com) | Sean McCauley (sean@mccauleyroach.com) |
| 2001 Wyandotte | 527 W. 39th Street, Suite 200 |
| Kansas City, Missouri 64108 | Kansas City, Missouri 64111 |
| (Counsel for Golubski) | (Counsel for Golubski) |

*/s/ Quentin M. Templeton*
Quentin M. Templeton

19