## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHELLE HOUCKS, ET AL.,    )
    )
    PLAINTIFFS,    )
    )
V.    )    CASE NO.: 2:23-CV-02489-TC-BGS
    )
UNIFIED GOVERNMENT OF    )
WYANDOTTE COUNTY AND KANSAS    )
CITY, KANSAS, ET AL.,    )
    )
    DEFENDANTS.    )

### PLAINTIFFS' OPPOSITION TO DEFENDANTS'[1] MOTION TO DISMISS

The Plaintiffs Michelle Houcks, Saundra Newsom, Niko Quinn, Ophelia Williams, and Richelle Miller, by and through their attorneys, allege:

### INTRODUCTION

Defendants actively participated in a protection racket sanctioned by the Unified Government that fostered and enabled the worst criminal offenders in KCK. Defendants, through the Protection Racket, repeatedly threatened their victims, including Plaintiffs, that if they complained about the constitutional violations, they or their family would be killed, harmed, or have false convictions pinned on them. All of this from the very people sworn to serve and protect Plaintiffs. Defendants violated Plaintiffs' clearly established constitutional rights—that cannot be contested. Nevertheless, Defendants claim that Plaintiffs' detailed, 132-page, 537-paragraph Complaint does not contain a single viable claim against Defendants. Why? Who knows— Defendants never say. Not just light on argument, their memorandum frequently doesn't say

---

[1] "Defendants" refers to all defendants except Golubski, including The Unified Government of Wyandotte County and Kansas City, Kansas; Dailey; Swafford; Miller; Zeigler; Kill; Bye; and Ware.

*anything* about how the law they cite results in dismissal of *any* claim, much less all of them. The fatally flawed Motion should be denied.

L<small>EGAL</small> S<small>TANDARD</small>

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, Plaintiffs' Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Applying this standard involves "two working principles." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). *First*, the Court ignores "'labels and conclusions[,]'" "'formulaic recitation of the elements[,]'" and legal conclusions. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *Second*, the Court accepts all remaining allegations and logical inferences as true, asking only whether Plaintiffs alleged facts making their claim plausible. *Id.* at 678–79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,'" but instead just asks the claimant to plead facts—viewed in the light most favorable to it—alleging "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

A<small>RGUMENTS AND</small> A<small>UTHORITIES</small>

**I.**     **Plaintiffs' Complaint alleges plausible claims sufficient to survive Rule 12(b)(6)'s motion to dismiss standard.**

Defendants make a sweeping claim that the Complaint "is replete with formulaic, conclusory allegations unsupported by factual allegations." Doc. 19 at 5. But as will quickly become a theme throughout this Opposition, Defendants fail to back up that argument with any specific examples from the Complaint or analysis. To the contrary, and as shown below, Plaintiffs'

2

Complaint satisfies Fed. R. Civ. P. 8's requirement that it "need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' from the named defendant[s]." *Hills v. Arensdorf*, 543 F. Supp. 3d 1065, 1067 (D. Kan. 2021), *aff'd* No. 21-3118, 2022 WL 3153657 (10th Cir. Aug. 8, 2022) (first quoting Fed. R. Civ. P. 8(a); then citing *Twombly*, 550 U.S. at 570). This Rule 8 pleading standard is more than adequately met here. Also, and as explained in this Opposition, the Complaint satisfies the *Iqbal/Twombly* pleading standard recited above because it "nudge[s] [Plaintiffs'] claims across the line from conceivable to plausible" sufficient to survive dismissal under Rule 12(b)(6). *Twombly*, 550 U.S. at 570.

## II.     Tolling the statute of limitations is a fact question.

Defendants concede that Kansas law determines whether Plaintiffs are entitled to equitable tolling. Doc. 19 at 9–10. And under Kansas law, "[w]hether equitable estoppel applies involves a question of fact." *L. Ruth Fawcett Tr. v. Oil Producers Inc. of Kan.*, 507 P.3d 1124, 1144 (Kan. 2022) (reversing district court's post-discovery 12(b)(6) dismissal); *Gas Serv. Co. v. Consol. Gas Utilities Corp.*, 65 P.2d 584, 584 (Kan.1937) (holding equitable estoppel "must depend on its own facts"). This is well established. *Bistline v. Parker*, 918 F.3d 849, 883–84 (10th Cir. 2019) (noting other cases in reversing district court's 12(b)(6) dismissal for "claims on statute of limitations grounds as a matter of law"); *Dunn v. Dunn*, 281 P.3d 540, Syl. ¶ 8 (Kan. Ct. App. 2012) ("Equitable estoppel generally involves questions of fact and, when the facts are disputed or when necessary facts come from ambiguous documents, summary judgment is inappropriate and the factual dispute must await resolution at trial").

Like Golubski, Defendants confuse equitable tolling with equitable estoppel. "[A]lthough the doctrines of equitable tolling and equitable estoppel are often confused, the better reasoning states that equitable tolling applies when the plaintiff is unaware of his cause of action, while

equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit." *Est. of Amaro v. City of Oakland*, 653 F.3d 808, 814 (9th Cir. 2011). Because Plaintiffs knew when they were raped, sexually assaulted, unlawfully detained, and otherwise abused, Defendants' reliance on equitable tolling and its requirement of "diligent pursuit of rights" is the wrong test and has no bearing on this case.

Incredibly, Defendants do, however, claim that the Complaint lacks facts showing an extraordinary circumstance stood in Plaintiffs' way of filing this suit. Doc. 19 at 9. Perhaps threats of rape, murder, and pinning false criminal charges are so commonplace within the Unified Government that Defendants don't see them as "extraordinary." But that is more of an indictment of Defendants than Plaintiffs' Complaint. Defendants' conduct, justifying tolling any applicable statute of limitations, is detailed extensively in the Complaint. *See, e.g.*, Doc. 1 at ¶¶ 254–276.

Where a defendant, by deception or in violation of his duty to a plaintiff, caused a plaintiff to subject her claim to a statutory bar, the defendant wrongfully obtained an advantage and must be estopped from asserting a statute of limitations defense. *Rockers v. Kan. Tpk. Auth.*, 991 P.2d 889, 894–95 (Kan. 1999) (quoting *Klepper v. Stover*, 392 P.2d 957, 959 (Kan. 1964)). Kansas's fact-intensive analysis of equitable estoppel applies where "another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed. The party asserting estoppel must also show that the party reasonably relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *L. Ruth*, 507 P.3d at 1144 (internal quotation omitted). Each of these elements is pleaded in the Complaint. First, Defendants acted, represented, admitted, or remained silent when they had a duty to speak. Doc. 1 at ¶¶ 256–257; 266. Second, this conduct induced Plaintiffs to believe certain facts existed. Doc. 1 at ¶¶ 257; 264–265. Plaintiffs

4

reasonably relied and acted upon such belief. Doc. 1 at ¶¶ 259–260; 267. Finally, Plaintiffs would now be prejudiced if Defendants were permitted to deny the existence of such facts. Doc. 1 at ¶¶ 268–269. Especially because the Court must accept these allegations and logical inferences as true at this stage, *Kansas Motorcycle Works USA, LLC v. McCloud*, 596 F. Supp. 3d 1112, 1117 (D. Kan. 2021), this is more than adequate to overcome Defendants' attempt to dismiss the Complaint at this early juncture. Defendants simply cannot dismiss away the Complaint's *one hundred and thirty-two pages* of factual allegations. And encouraging the Court to do so is inviting clear error.

None of this is surprising to Defendants. As detailed in the Complaint, the factual basis for equitably tolling the statute was, by Defendants' design, intended to prevent Plaintiffs from ever raising an objection to their heinous, unconstitutional conduct. Nor are these facts surprising to the Court. In Golubski's rape case, the Government has repeatedly detailed the fear Golubski intentionally created to prevent Plaintiffs from pursuing their claims over decades. *See, e.g.*, Motion for Detention, *United States v. Golubski*, No. 5:22-cr-40055-TC (D. Kan. Sept. 16, 2022), ECF No. 10 at 22. The fear Golubski intentionally created was the basis for Magistrate Schwartz's denial of his release from home detention. Order, *Golubski*, No. 5:22-cr-40055-TC (D. Kan. Jan. 18, 2023), ECF No. 22 at 6 ("many of the alleged witnesses have intentionally moved residences and have kept their new home information private out of fear of what could happen if…known by [Golubski]. Setting up zones, which would contemporaneously notify [Golubski] when he was near those witnesses, would create new and additional risks to the safety of individuals in the community"). Although not on trial in these criminal cases and therefore not discussed there, Plaintiffs allege that Defendants intentionally created the same fear, together with Golubski, to further their and the Protection Racket's interests.

**III.**   **Even if there were a question of estoppel, Congress expressly abolished statute of limitations for constitutional violations in the Civil Rights Act of 1871.**

Defendants' entire statute of limitations argument is premised on a scrivener's error from 1874. This case enables the judiciary to fix over a century of law that is clearly erroneous in light of Congress's actual (albeit previously lost) unambiguous statute. It is undeniable that § 1983, as approved by Congress, included the "Notwithstanding Clause," providing that constitutional violations were redressable "any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding." Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13 (1871). It is also undeniable that this language was impermissibly (and perhaps intentionally by pro-Southern Johnson holdovers) omitted from the first formal codification of federal law during the Grant administration.

Federal case law relying on a forum state's personal injury statute of limitations has existed for less than 40 years. *Wilson v. Garcia*, 471 U.S. 261 (1985). Before the *Wilson* majority left "behind a century of precent" "with hardly a backward look," *Id.* at 283 (O'CONNOR, J., dissenting), and since 1830, federal courts adopted the forum state's statute of limitations of the most closely analogous state-law claim[.]" *Id.* at 280. Federal courts believed that because Congress failed to address statutes of limitations, § 1988's prescription to turn to state law where federal law was silent resolved the matter. *Id.* at 281. But that understanding was all based on an erroneous version of Congress's law.[2]

---

[2]   The Reviser was not authorized to make substantive changes to or alter the scope of Congress's laws. *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 510 (1939) (stating River's changes were "not intended to alter the scope" of § 1983); Revised Statutes of the United States, Preface, at v (1878) (stating Reviser had no authority to make substantive changes); A Act to Provide for the Preparation and Publication of a New Edition of the Revised Statutes of the United States, 19 Stat. 268, ch. 82, § 4 (1877), as amended by 20 Stat. 27, ch. 26 (1878) (stating revised statutes are "legal" evidence of laws, but not "conclusive").

As Congress's original language—Notwithstanding Clause intact—makes clear, all state laws purporting to limit § 1983 are expressly preempted, thereby rendering state statutes of limitations without effect. And this makes sense; state officials are obligated to take an oath to support the Constitution because they "have an essential agency in giving effect to the federal Constitution." Federalist No. 44 (J. Madison). Their constitutional violations should receive no protection, lest citizen (and State) rights to redress constitutional violations be limited to violence and war. *See* Federalist No. 27 (A. Hamilton).

Given the historical need for § 1983 (southern states' refusals to enforce reconstruction's rights to *all* citizens) allowing each State to create its own statute of limitation ensures judicially-mandated discrimination between citizens of different states, violating the Fifth Amendment's Due Process Clause and the Fourteenth Amendment's Equal Protection Clause.[3] But "[t]o the extent the Reconstruction Congress even contemplated" a statute of limitation defense "would apply to the Civil Rights Act of 1871, the Notwithstanding Clause would have sufficed to assuage those concerns." Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev. 201, 236 (2023).

**IV.    Kansas's statute of repose doesn't apply to Plaintiffs' § 1983 claims.**

Defendants generally assert that an unidentified statute of repose bars Plaintiffs' claims. Doc. 19 at 11. To support their argument, Defendants cite case law generally describing the law governing statutes of repose, but they never explain how any particular federal or Kansas statute

---

[3]     *Compare* Tenn. Code. Ann. § 28-3-104 (one-year in Tennessee) *with* K.S.A. 60-513 (two-years in Kansas) *with* Ark. Code Ann. § 16-56-105 (three-year in Arkansas) *with* Fla. Stat. § 95.11 (four-years in Florida) *with* Mo. Rev. Stat. § 516.120 (five-years in Missouri) *with* Me. Stat. tit. 14, § 752 (six-years in Maine).

of repose applies to this lawsuit. That's because no statute of repose applies to bar Plaintiffs' federal civil rights claims under § 1983.[4]

Although the Tenth Circuit has never addressed whether a state statute of repose applies to federal civil rights claims, the majority of courts that have addressed the question—including an unpublished opinion from the District of Kansas—have held that state statutes of repose don't apply to federal civil rights claims. *See Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1219 (11th Cir. 2001) (holding Alabama's judicially created rule of repose did not apply to bar §§ 1981 or 1982 claims); *Blackmon v. Holder*, No. 5:20-CV-524-FL, 2021 WL 2877902, at *5 (E.D.N.C. July 8, 2021) (recognizing "several courts have declined to apply state statutes of repose to federal claims" because "unlike statutes of limitations, statutes of repose are rare in federal statutory schemes[,]" finding "line of reasoning" in those cases "persuasive," and concluding "North Carolina statute of repose does not apply to plaintiff's § 1983 claims"); *Chapman v. Rhoney*, No. 1:10CV258, 2012 WL 1944863, at *3 (W.D.N.C. May 30, 2012) (holding North Carolina's statute of repose did not apply to § 1983 claims); *Lowery v. Cnty. of Riley*, No. 04-3101-JTM, 2005 WL 1242376, at *5 (D. Kan. May 25, 2005) (applying "Eleventh Circuit's reasoning in *Moore*" to hold that K.S.A. 60-513(b)'s statute of repose did not apply, and thus did not bar, plaintiff's § 1983 claim); *Craft v. Vanderbilt Univ.*, 18 F. Supp. 2d 786, 798 (M.D. Tenn. 1998) (holding Tennessee's statute of repose did not apply to §§ 1983 or 1985 claims).

In the District of Kansas case, Judge Marten observed that the "general rule is that a federal civil rights action is subject to the state statute of limitations, *but not the state statute of repose*." *Lowery*, 2005 WL 1242376, at *3 (emphasis added) (first citing *Sheets v. Lindsey*, 783 F. Supp. 577, 578–579 (D. Utah 1991); then citing *Moore*, 267 F.3d 1209). He noted that defendants hadn't

---

[4]     Each of the Complaint's 28 Counts alleges federal civil rights violations under 42 U.S.C. § 1983. Doc. 1 at ¶¶ 287–536.

cited "a single case which applies a statute of repose to a federal civil rights case."[5] *Id.* at *5. And, Judge Marten concluded, based "on the Eleventh Circuit's reasoning in *Moore*, it would be inappropriate to apply [K.S.A. 60-513(b)'s] ten year limitation to this case" because in "federal civil rights cases, statutes of repose are not universally familiar aspects of federal litigation or indispensable to any scheme of justice[,]" and thus "a lack of a statute of repose cannot be considered a deficiency in the federal civil rights statute." *Id.* at *5. And federal law must be found to be deficient before the Court is permitted to evaluate state common law. 42 U.S.C. § 1988(a). The very same analysis applies here. The Court should follow the overwhelming weight of authority—including Judge Marten's opinion in *Lowery*—and hold that no statute of repose bars any of Plaintiffs' § 1983 claims.

## V.     Defendants participated in violations of Plaintiffs' constitutional rights.

Defendants fail to describe why they are attempting to dismiss the Complaint. However, the tone of their brief appears to hide behind Golubski and imply that the Complaint does not describe Defendants' actions in detail. And given Golubski's multiple federal indictments and well documented propensity to rape Black women, it is a logical attempted defense. But the Complaint is not limited to Golubski. For example, it explains how Defendants operated and benefited from a Protection Racket that protected violent gangs and criminals and operated a network of women used as informants. Doc. 1 at ¶¶ 34–44. And it specifically describes each Defendant's conduct. *Id.* at ¶¶ 38 (Zeigler), 39 (Kill, Bye, and Ware), 40 (Dailey, Swafford, Miller, and Zeigler). Each of these defendants were employees of the Unified Government for purposes of *Monell* liability.

---

[5]     Like the *Lowery* defendants, Defendants don't cite a single case where a court has applied a statute of repose to bar a federal civil rights claim. Also of note, the *Lowery* defendants were represented by the same law firm that represents Defendants in this lawsuit. But yet, Defendants' brief never cites *Lowery*, much less explains why the Court should not maintain consistency in the District and follow *Lowery*'s persuasive reasoning governing the statute of repose in this case.

But that's not all. Doc. 1 at ¶¶ 45–55 (describing Defendants' terrorizing, preying, and coercing sexual acts from Black women, with the Unified Government's full knowledge). And Defendants repeatedly turn up, specifically named, again and again in the Complaint. *See, e.g.*, Doc. 1 at ¶¶ 29, 38, 40, 48, 54, 171, 219 (Zeigler); 30, 39, 180, 182–90 (Kill); 31, 39, 180, 182–87, 191–92 (Bye); 32, 39, 125-26, 133 (Ware); 24, 40, 83–84 (Dailey); 25, 40 (Swafford); 26, 40 (Miller); and 21, 194–247 (Unified Government). Plaintiffs' 132-page, 536-paragraph Complaint is not a stab in the dark. It does not make cursory allegations or merely recite the elements of the claims at issue. It is detailed, factual, and damning. And it more than adequately establishes Defendants' participation and role in Plaintiffs' constitutional violations.

**VI.   The Complaint alleges plausible § 1983 conspiracy claims against Defendants.**

Defendants assert that the Complaint fails to allege § 1983 conspiracy claims against the individual Police Chief Defendants and Detective Defendants because there are no "specific facts show[ing] any of these defendants were part of a conspiracy to violate [Plaintiffs'] rights." Doc. 19 at 13.[6] Defendants cite *Robbins v. Oklahoma* for the proposition that Plaintiffs must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." 519 F.3d 1242, 1250 (10th Cir. 2008). But *Robbins* starkly differs from the Complaint's allegations here. The *Robbins* complaint alleged generally and collectively that "defendants" had violated plaintiffs' constitutional rights but made "no distinction as to what acts are attributable to whom," and thus, it was "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.* That's not the situation here.

---

[6]   This portion of Defendants' Motion applies to seven defendants. The individual Police Chief Defendants include: (1) Thomas Dailey, (2) James Swafford, and (3) Ronald Miller. The individual Detective Defendants include: (4) Dennis Ware, (5) Terry Zeigler, (6) Michael Kill, and (7) Clayton Bye.

Plaintiffs' Complaint specifically alleges facts showing how each individual defendant is alleged to have conspired to violate Plaintiffs' constitutional rights, thereby giving each of them fair notice of the § 1983 conspiracy claims asserted against the individual Police Chief Defendants[7] and the Detective Defendants.[8]

Indeed, the Tenth Circuit has held that "occasional use of collective references to 'the Defendants' or 'Defendant Officers'" does not subject § 1983 conspiracy claims to Rule 12(b)(6) dismissal. *See Bledsoe v. Carreno*, 53 F.4th 589, 609–10 (10th Cir. 2022) (affirming district court's denial of motion to dismiss § 1983 conspiracy claims where complaint "identified specific actions Defendants allegedly took to carry out" conspiracy). Instead, the Tenth Circuit has held, collective allegations—*i.e.*, ones "contain[ing] multiple claims against multiple defendants"—suffice to survive a Rule 12(b)(6) motion to dismiss when "there is no confusion as to whom the allegation

---

[7]     *See, e.g.*, Doc. 1 at ¶ 40 (alleging that Dailey, Swafford, and Miller "protected and enabled the Protection Racket" by "actively encourag[ing] its continued operation and protect[ing] the other Defendants from scrutiny, investigation, and criminal charge"), ¶ 42 (alleging that Dailey, Swafford, and Miller "either turned a blind eye" or "benefited from the illicit arrangements" between the Protection Racket and "major drug dealers" because "the ability of major gangs to operate with impunity made it obvious to all that they were operating with government protection"), ¶ 213 (alleging that Dailey, Swafford, and Miller "encouraged and assisted" the Detective Defendants in "trad[ing] their ability to 'fix' criminal charges in exchange for sexual favors and information"), ¶ 265 (alleging Dailey, Swafford, and Miller "took affirmative steps to further conceal their and Detective Defendants' misconduct by, including, but not limited to, suppressing complaints made by victims"); *see also id.* at ¶¶ 24–26, 35–36 48, 50, 52, 54, 84, 196, 207, 213, 227–28, 233, 242, 244, 265, 266, 269(a)–(h), 305–06, 311, 348, 361–62, 402, 415–16, 459, 472–73, 513–14 (alleging additional acts committed by Dailey, Swafford, and/or Miller in furtherance of the conspiracy).

[8]     *See, e.g.*, Doc. 1 at ¶ 38 (alleging that, as a detective, "Zeigler helped obtain false convictions and encouraged the Protection Racket's conduct," and as Chief of Police, "Zeigler protected and enabled the Protection Racket, fostered a culture of unlawful and unethical police conduct, failed to discipline or otherwise prevent the unlawful conduct detailed herein, and otherwise ensured the conduct he knew was occurring was not stopped and instead was protected from oversight or discipline"), ¶ 39 (alleging that Kill, Bye, and Ware "were KCKPD detectives and aided the Protection Racket by fabricating false evidence and testimony, enforcing ultimatums and threats on innocent civilians, and shaking down drug dealers to extort and collect 'protection' payments, including stolen goods"); *see also id.* at ¶¶ 35–36, 39, 40, 45, 47, 48, 52, 54, 125–26, 133, 180–92, 203(a)–(g), 206–07, 211–214, 217, 219, 226, 228, 233, 240(e), 244, 269(a)–(h), 305–06, 361–62, 415–16, 472–73, 513–14 (alleging additional acts committed by Ware, Zeigler, Kill, and/or Bye in furtherance of the conspiracy).

is asserted against." *Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2008) (affirming district court's denial of motion to dismiss where "complaint clearly name[d]" three defendants "as the individuals who allegedly discouraged the reporting of abuse" and "also clearly identifie[d]" the same three "as the individuals who were repeatedly notified of injuries and/or abuse" incurred by victim (internal quotation marks omitted)); *see also Bledsoe*, 53 F.4th at 610 (holding allegations about specific acts committed by defendants "were sufficient to allege the existence of a conspiracy to violate [plaintiff's] constitutional rights"). No confusion exists here. The Complaint's allegations—taken as true and viewed in Plaintiff's favor—provide sufficient notice to each of the individual Police Chief Defendants and Detective Defendants of their alleged specific actions that give rise to Plaintiffs' § 1983 conspiracy claims.[9]

---

[9]    Defendants' brief confines their dismissal arguments of the § 1983 conspiracy claims to the assertion that the Complaint contains improper collective allegations of conspiracy against each Defendant. Doc. 19 at 13. As shown above, that argument fails. Later in their brief, Defendants set forth a 7-page chart with additional, conclusory arguments for dismissal. *Id.* at 17–24. One of those conclusory arguments—made without any factual or legal citation—is that the Complaint fails to allege specific facts "showing (a) an agreement and concerted action among the defendants, (b) an agreement on a common, unconstitutional goal with concerted action undertaken to advance that unconstitutional goal, and/or (c) from acts furthering the conspiracy's purpose." *Id.* Because defendants don't develop or brief this argument at all, the Court should decline to consider it. *See, e.g.*, *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (rejecting argument "because it was inadequately developed in the opening brief" and thus was "invalid").

   And, even if the Court were to consider the argument, it fails on its merits. "To state a § 1983 conspiracy claim, [plaintiff must] allege specific facts showing an agreement and concerted action among defendants[.]" *Bledsoe*, 53 F.4th at 609 (citation and internal quotation marks omitted). The Tenth Circuit has recognized, however, that "[d]irect evidence of an agreement to join a . . . conspiracy is rare[.]" *Id.* (citation and internal quotation marks omitted). Thus, "a defendant's assent can be inferred from acts furthering the conspiracy's purpose." *Id.* (citation and internal quotation marks omitted). Here, the Complaint alleges facts sufficient to support a plausible inference of an agreement on a common, unconstitutional goal, concerted action undertaken to advance that unconstitutional goal, and acts taken in furtherance of the conspiracy's purpose. *See, e.g.*, Doc. 1 at ¶¶ 7, 46, 251–53, 305, 361, 415, 472. 513 (alleging facts supporting an inference of a scheme or agreement to violate Plaintiffs' constitutional rights); *see also id.* ¶¶ 35–54 (alleging facts supporting an inference of concerted action); *see also id.* ¶¶ 2, 4, 56–193, 251–53, 306, 362, 388, 416, 473, 514 (alleging acts taken by Defendants in furtherance of the conspiracy).

**VII.**   <u>**The Complaint adequately states a familial association claim.**</u>

Defendants complain that Counts 7, 13, and 19 fail to state a familial association claim. Doc. 19 at 11–12. To support this allegation, Defendants merely state "[e]ach plaintiff fails to allege that the individual Defendants intended to interfere with that relationship." *Id.* at 12. That's all they give the Court. This is not a serious attempt to dismiss these counts. It's not an argument at all.

Nevertheless, the following is offered out of an abundance of caution should the Court believe Defendants properly briefed the matter. It is undeniable that interference with a parent's relationship with their child, including short, forced separation, is a serious impingement on the parent's rights. *J.B. v. Washington Cnty.*, 127 F.3d 919, 925 (10th Cir. 1997). Instead, Defendants seem to only address the intent element, claiming without analysis that Plaintiffs cannot show Defendants intended to interfere with the familial relationships. However, this claim is specifically belied by the Complaint.

Count 7 (Quinn) names Ware, Dailey, and Swafford and alleges, in part, (1) Ware threatened Quinn that her children would be taken if she didn't perjure herself to convict McIntyre; and (2) Dailey and Swafford were aware of, endorsed, permitted, and encouraged these threats to coerce and suborn perjury. Doc. 1 at ¶¶ 344, 348. Count 13 (Newsom) names Ware, Dailey, and Swafford and alleges, in part, (1) Defendants, members of the Protection Racket, were compensated to cover up the gang murder of Doniel Quinn; (2) they covered up the murder by conspiring to falsely convict McIntyre; (3) without Defendants' willingness to cover up the crime and protect the murderer, Doniel Quinn would not have been murdered; and (4) Dailey and Swafford were aware of, endorsed, permitted, and encouraged Ware's protection of the real murderer. Doc. 1 at ¶¶ 397–99, 402. Count 19 (Williams) names Zeigler, Dailey, and Swafford

and alleges, in part, (1) Defendants, members of the Protection Racket, were compensated to cover up the gang murder of Wilbur and Wilma Williams; (2) they covered up the murder by conspiring to falsely convict Williams twin children; (3) without Defendants' willingness to cover up the crime and protect the murderer, Williams's twins would not have been falsely convicted; (4) Williams's twins were wrongfully detained and arrested; and (5) Dailey and Swafford were aware of, endorsed, permitted, and encouraged Zeigler's protection of the real murderer which they knew resulted in Williams's twins' false conviction. Doc. 1 at ¶¶ 453–56, 458, 459. These facts more than adequately establish the intent requirement of a familial relationship claim.

## VIII.   The Complaint adequately states a failure to intervene claim.

Worse than their familial association "argument," Defendants' failure to intervene section fails to identify *any* issue, *any* count, or *any* element missing from the Complaint. This does not seek dismissal of anything. It's merely a crib sheet on some of the law relative to the claim. That's it. Again, the following is offered out of an abundance of caution that the Court believes Defendants properly briefed the matter.

The authority cited by Defendants appears to argue that they were not present when the various constitutional violations occurred. However, that is not a basis to avoid liability. Instead, a defendant may either observe **or have reason to know** of constitutional violations. *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury[.]" *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). Here, Plaintiffs claim that Defendants knew of Golubski's and the Protection Racket's rampant constitutional violations, but they failed to stop them. Far from it, Defendants are alleged to have been willing participants in repeated constitutional violations, which led, in part, to Plaintiffs' constitutional

violations. This is sufficient to create the factual issue necessary to engage in discovery and obtain a jury's decision on whether Defendants knew of the constitutional violations and whether they could have intervened to stop each.

## IX.    The Complaint plausibly alleges supervisory liability under § 1983.

Defendants assert that the Complaint's Counts 4, 10, 16, 22, and 27 fail to state plausible § 1983 claims for supervisor liability. To plead plausible § 1983 claims based on supervisory liability, plaintiff must allege an "affirmative link" between the defendant supervisor and the constitutional violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)). A "'supervisor's mere knowledge of his subordinate's' conduct" doesn't establish the requisite "affirmative link." *Id.* (quoting *Iqbal*, 556 U.S. at 677). Instead, plaintiff must allege three requirements to assert a § 1983 claim based on a defendant's supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind. *Id.* Plaintiffs' Complaint satisfies all three requirements.

*First*, Plaintiffs allege personal involvement by the Police Chief Defendants—Dailey, Swafford, Miller, and Ziegler—to hold them liable under Counts 4, 10, 16, 22, and 27 because the Complaint alleges facts supporting a plausible finding or inference that these four Defendants "create[d], promulgate[d], implement[ed], or in some other way possesse[d] responsibility for the continued operation of a policy" that deprived Plaintiffs of their constitutional rights.[10] *Dodds*, 614 F.3d at 1199.

---

[10]    *See* Doc. 1 at ¶¶ 199 & 242 (alleging that UG "maintained informal policies, procedures, and/or customs that permitted police (including Detective Defendants) to (i) kidnap, coerce, pressure, sexually assault, and rape Black women; (ii) utilize improper investigative practices to obtain wrongful convictions in order to support and further a government-sanctioned Protection Racket; and (iii) discourage, prevent, and fail to investigate complaints of police misconduct" and that "[d]espite knowledge of the foregoing" unconstitutional policies, Defendants Dailey, Swafford, Miller, and Ziegler "continued to reward and promote, rather than discipline, Detective Defendants and ratified unconstitutional conduct which fostered

*Second*, Plaintiffs allege facts supporting a plausible finding or inference of causation.[11] *And third*, Plaintiffs allege facts from which a reasonable trier of fact could infer that each Police Chief Defendant had the requisite state of mind—*i.e.*, "meaning the supervisor acted knowingly or with 'deliberate indifference' that a constitutional violation would occur."[12] *Dodds*, 614 F.3d at 1196 (citation and internal quotation marks omitted). Thus, the Complaint alleges plausible § 1983 claims against the Police Chief Defendants in Counts 4, 10, 16, 22, and 27.

## X.  Williams's "claims" are not collateral attacks on her sons' convictions and are not barred by the *Heck* Doctrine.

Defendants summarily claim that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Williams's "claims."[13] But the Tenth Circuit has cautioned against applying *Heck* in "blanket" fashion. *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). Instead, claims must be independently evaluated and *Heck* only applies if the claim's success **standing alone** would "demonstrate the invalidity of any criminal judgment against **the plaintiff**[.]" *Id.* (emphasis added). Even if *Heck* applied to a nonparty's conviction (which Defendants fail to provide any authority to establish), there is nothing in her claims that would require Williams to prove the invalidity of any non-party's conviction. Her claim is personal, and as such, is unaffected by *Heck*

---

a culture of abuse"); *see also id.* at ¶¶ 3, 5, 38, 40, 42, 44, 48, 52, 54, 126, 236 (alleging additional facts about Dailey, Swafford, Miller, and Ziegler's approval and endorsement of these unconstitutional policies thereby showing that these Police Chiefs implemented, or at least possessed responsibility for continued operation of, these unconstitutional policies).

[11]    *See* Doc. 1 at ¶¶ 194–98 & 242 (alleging that "constitutional violations against Plaintiffs were not anomalous or isolated acts of misconduct" but instead "resulted directly from" the policies that Defendants Dailey, Swafford, Miller, and Ziegler implemented by "ratif[ying] unconstitutional conduct" and "foster[ing] a culture of abuse"); *see also id.* at ¶¶ 313, 369, 423, 480, 521 (alleging supervisor's actions caused Plaintiffs' injuries).

[12]    *See* Doc. 1 at ¶¶ 40, 42, 48, 52, 196, 207, 213, 228, 233, 242, 244, 248, 265, 266, 269(a), 311, 367, 421, 478, 519 (alleging that Defendants Dailey, Swafford, Miller, and Ziegler acted knowingly or with deliberate indifference).

[13]    Defendants fail to identify which of Williams's 6 counts (Counts 18–23) they are challenging.

because success of her claim certainly would not have demonstrated invalidity of her non-party sons' convictions. *See Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (discussing that § 1983 suits are personal).

Williams's argument here is **the exact same argument** Golubski made in the McIntyre litigation. Memorandum in Support of Motion to Dismiss, *McIntyre v. Unified Government*, No. 2:18-cv-02545-KVH (D. Kan. Oct. 18, 2019), ECF No. 114 at 2–3. And although he was wrong then—as it applied to the statute of limitations—Golubski's prior description of the law is right now. For example, Count 19 points to Golubski's lies about her children's location when he sat in her living room and sexually harassed her and her daughter. Doc. 1 at ¶ 452. Count 19 also points to the wrongful detention and arrest of Williams's sons. Doc. 1 at ¶ 458. Such a claim was *expressly* noted by *Heck* as a valid § 1983 suit absent reversal of a criminal conviction. *Heck*, 512 U.S. at 487 n.7.

## XI. The Complaint plausibly alleges *Monell* claims against the Unified Government.

Defendants make a cursory argument that the Complaint fails to state a § 1983 claim against the Unified Government under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Although Defendants correctly recite the elements of a *Monell* claim, they wrongly argue that the Complaint fails to allege facts sufficient to support the elements of such a claim. *Monell* held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. Instead, municipalities are subject to § 1983 liability when an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id*; *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Thus, the elements of a *Monell* claim are: "'(1) official policy or custom[,] (2) causation, and (3) state of mind.'" *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1239 (10th Cir. 2020) (quoting *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir.

2019)). The Complaint sufficiently pleads all three elements to support the *Monell* claims in Counts 5, 11, 17, 23, and 28.

> *First*, our Circuit has explained that a "municipal policy or custom" may include:
>
> > (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation and internal quotation marks omitted). Here, the Complaint alleges that the Unified Government had official polices or customs in the form of (2) informal customs amounting to a widespread practice to constitute official customs; (4) ratification by final policymakers; and (5) failure to adequately train and supervise.[14]

For the *second* and *third* elements, a plaintiff can satisfy the causation and state-of-mind requirements by demonstrating that the "policy is facially unlawful." *Hinkle*, 962 F.3d at 1240. Here, there's no question that the Unified Government's informal polices of permitting police to (i) kidnap, coerce, pressure, sexually assault, and rape Black women, (ii) use improper

---

[14]    *See* Doc. 1 at ¶¶ 196, 199–299, 235–41, 319, 375, 429, 486, 527 (alleging informal policies or customs that were widespread), ¶¶ 230–34, 320, 376, 430, 487, 528 (alleging failure to train and supervise), ¶¶ 204, 222, 229, 234, 242–47, 321, 377, 431, 488, 529 (alleging ratification by final policymakers including Police Chiefs). Specifically, the statements by other KCKPD officers who have attested to the existence of certain policies, procedures, and customs (*see id.* at ¶¶ 235–41) establishes a plausible inference that the practices were "widespread" such that they constitute an official municipal policy. *See, e.g.*, *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303–04 (7th Cir. 2010) (holding testimony by employees about the frequency with which they collected prisoner's medical requests presented a triable issue whether County had "widespread practice of failing to review inmates' timely filed medical requests"). *Cf. Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (explaining that "to prove the existence of such a 'continuing, persistent and widespread' custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way").

investigations to secure wrongful convictions, and (iii) discourage, prevent, and fail to investigate complaints of police misconduct are facially unconstitutional.[15] And even if not facially unconstitutional, the Complaint alleges the second and third requirements for each of the Unified Government's official policies or customs sufficient to state a *Monell* claim. For the *second* element, the Complaint alleges the causation requirement because the alleged policies directly caused violations of Plaintiffs' constitutional rights.[16] *See, e.g.*, *Hinkle*, 962 F.3d at 1242 (holding plaintiff "satisf[ied] the causation" requirement because policy "directly caused [his] unlawful strip search"). And for the *third* element, the Complaint alleges the state of mind requirement by alleging facts supporting a plausible inference that the UG was deliberately indifferent to the known and obvious consequences of the policies.[17] *See Hinkle*, 962 F.3d at 1242 (holding plaintiff alleged the "state-of-mind" requirement because "County was deliberately indifferent as to the

---

[15]    *Cf. Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (explaining that "when an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question" but noting that the rule didn't apply in that case where plaintiff didn't "contend the County maintains an official policy of sexually harassing, assaulting, or discriminating against women prisoners" or that an individual supervisor "authorized [the] sexual assaults" but instead asserted liability based on employee hiring and training); *Brown v. Flowers*, 974 F.3d 1178, 1186 (10th Cir. 2020) (explaining Tenth Circuit has "long held that nonconsensual, coerced sex between a jailer and an inmate violates the Constitution"). *See also Bledsoe*, 53 F.4th at 612 (holding "fabricating evidence and knowingly using false testimony" to wrongfully convict § 1983 plaintiff "was a violation of his constitutional rights"); *T.D. v. Patton*, 868 F.3d 1209, 1226–1230 (10th Cir. 2017) (holding state actor violated "substantive due process right by creating or increasing [victim's] vulnerability to the danger of private violence" by abuser when state actor withheld information and concerns about abuser, was aware of and failed to investigate evidence of abuse, and state actor was responsible for placing victim in abuser's home); *Briggs*, 274 F. App'x at 736 (concluding that plaintiff "sufficiently alleged that Defendants created or increased [victim's] vulnerability to abuse by their alleged act of discouraging the reporting of additional incidents of abuse[,]" to support claim for substantive due process violation).

[16]    *See* Doc. 1 at ¶¶ 194–98, 328, 384, 438, 495, 536 (alleging facts supporting inference of causation).

[17]    *See* Doc. 1 at ¶¶ 196–98, 204, 211–14, 221–22, 228–29, 233–34, 242–47, 269(a), 322–27, 378–83, 432–37, 489–94, 530–35 (alleging facts showing finding or inference of knowledge and/or deliberate indifference).

obvious effects of the policy"). Thus, Plaintiffs' Complaint states plausible *Monell* claims against the UG.

**XII.**     **No Defendant deserves qualified immunity at the pleading stage.**

The individual Defendants argue qualified immunity shields them from liability for the Complaint's allegations of wrongdoing. But the Complaint's factual allegations—accepted as true and viewed in Plaintiffs' favor—establish that the qualified immunity defense doesn't apply.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome an individual defendant's invoking of the qualified immunity defense against a § 1983 claim, plaintiff must (1) allege facts that "make out a violation of a constitutional right[,]" and (2) demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232.

In a seven-page chart, Defendants provide a laundry list of reasons (without any explanation) to dismiss the Complaint's 28 separate counts under Rule 12(b)(6). They argue—in conclusory fashion—that qualified immunity applies to bar 16 of those Counts.[18] But they provide no citation to case law or supporting argument for their assertion of the qualified immunity defense. The Court should decline to apply the qualify immunity defense for this reason alone. *See, e.g.*, *Means v. Goodland Reg'l Med. Ctr.*, No. 22-CV-01239-TC-GEB, 2023 WL 8018925, at *5 (D. Kan. Nov. 20, 2023) (holding defendant wasn't "entitled to qualify immunity" where he argued "neither that the law was unclear nor that there was factual ambiguity" but instead "simply invoke[d] the doctrine by name . . . without making any factual or legal argument why it immunizes

---

[18]     Specifically, Defendants assert in conclusory fashion that the qualified immunity defense applies to Counts 2, 4, 6, 7, 8, 10, 13, 14, 16, 18, 19, 20, 22, 24, 25, and 27. Doc. 19 at 17–24.

his conduct"); *see also Hunter*, 739 F.3d at 495 (rejecting argument "because it was inadequately developed in the opening brief" and thus was "invalid"); *Marie v. Mosier*, 122 F. Supp. 3d 1085, 1108 (D. Kan. 2015) (declining to consider argument because defendants "provided no legal or factual basis" supporting it). Also, the Court can deny the qualified immunity defense applied to these 16 Counts because: (1) each Count alleges a plausible constitutional violation,[19] and (2) the rights at issue were clearly established[20] when Defendants committed the misconduct.[21]

---

[19]     *See* Docs. 1 at ¶¶ 35–54, 56–193, 200–28, 233, 235–47 (alleging facts from which a reasonable trier of fact plausibly could infer that Defendants operated a Protection Racket, and in turn, violated Plaintiffs' constitutional rights under the First, Fourth, Thirteenth, and Fourteenth Amendments by raping them, sexually harassing them, torturing them, suborning their perjury, unlawfully searching and seizing their homes and persons, interfering with their familial relationships, and/or failing to supervise or intervene to prevent Plaintiffs' rapes, sexual assaults, torture, unlawful searches and seizures, and/or deprivations of liberty without due process of law).

[20]     *See, e.g.*, *Bledsoe*, 53 F.4th at 612 (stating that, in 1986, the Tenth Circuit clearly established that falsifying evidence is a constitutional violation); *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992) (explaining that, in May 1989, it was clearly established law in the Tenth Circuit that sexual harassment under color of state law violated the Equal Protection Clause); *Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir. 2007) (citing Tenth Circuit case from 1996 that clearly established that, absent exigent circumstances, warrantless entry in homes violates constitutional rights under the Fourth Amendment (citing *United States v. Scroger*, 98 F.3d 1256, 1259 (10th Cir. 1996)); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) ("A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)); *Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1315 (10th Cir. 1999) (holding Supreme Court cases from 1982 and 1989 "clearly established" that "except in extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures" (citations omitted)); *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1241 (10th Cir. 1999) (explaining that "the Tenth Circuit has clearly established" in 1979 and 1988 cases "that a supervisor may be individually liable for failing to adopt or implement policy or training of subordinates to prevent deprivations of constitutional rights" (first citing *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988)); then citing *McClelland v. Facteau*, 610 F.2d 693, 696–98 (10th Cir. 1979)); *McClelland*, 610 F.2d at 696 (holding—in 1979—that chief of police's "failure to establish proper procedures or adequately train or supervise personnel [that] led to the deprivation" of constitutional rights stated a claim under § 1983).

[21]     And, even if not clearly established, Defendants were "on notice that their conduct violates established law" because of the obvious and egregious nature of the wrongful acts committed and, as the Supreme Court has explained, "a constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful[.]" *Hope v. Pelzer*, 536 U.S. 730, 741(2002) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). *See also Taylor v. Riojas*, 592 U.S. 7, 9 (2020) ("Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that [plaintiff's] conditions of

<u>**CONCLUSION**</u>

WHEREFORE, Plaintiffs request that the Court deny the remaining defendants' Motion to

Dismiss and any further relief the Court deems just and equitable.

Respectfully submitted,

/s/ William J Skepnek
William J. Skepnek   KS Bar #10149
THE SKEPNEK LAW FIRM, PA
1 Westwood Rd.
Lawrence, KS 66044
Telephone:   (785) 856-3100
Facsimile:   (785) 856-3099
bskepnek@skepneklaw.com

/s/ Quentin M. Templeton
Frankie J. Forbes        KS Bar #20725
Quentin M. Templeton  KS Bar #26666
Anne C. Emert            KS Bar #22144
FORBES LAW GROUP, LLC
12900 Metcalf Avenue, Suite 210
Overland Park, Kansas 66213
Telephone:   (913) 341-8600
Facsimile:   (913) 341-8606
fforbes@forbeslawgroup.com
qtempleton@forbeslawgroup.com
aemert@forbeslawgroup.com

/s/ Brennan P. Fagan
Brennan P. Fagan     KS Bar #20430
FAGAN & EMERT, LLC
800 New Hampshire Street, Suite 110
Lawrence, Kansas 66044
Telephone:   (785) 331-0300
Facsimile:   (785) 331-0303
bfagan@faganemert.com

ATTORNEYS FOR PLAINTIFFS

confinement offended the Constitution."); *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) ("But when a public official's conduct is so egregious even a general precedent applies with obvious clarity, the right can be clearly established notwithstanding the absence of binding authority involving materially similar facts." (citation and internal quotation marks omitted)).

## CERTIFICATE OF SERVICE

I certify that on February 2, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which sent a notice of electronic filing to all counsel of record:

FISHER, PATTERSON, SAYLER, & SMITH, LLP
David R Cooper (dcooper@fpsslaw.com)
Charles E Branson (cbranson@fpsslaw.com)
3550 SW 5th Street
Topeka, Kansas 66606
(Counsel for Unified Government, Dailey,
Swafford, Miller, Zeigler, Kill, Bye, Ware)

ENSZ & JESTER, P.C.
Chris Napolitano (cnapolitano@enszjester.com)
1100 Main Street, Suite 2121
Kansas City, Missouri 64105
(Counsel for Golubski)

SHAFFER LOMBARDO SHURIN
Dawn Parsons (dparsons@sls-law.com)
Peter Rottgers (prottgers@sls-law.com)
2001 Wyandotte
Kansas City, Missouri 64108
(Counsel for Golubski)

MCCAULEY & ROACH, LLC
Morgan Roach (morgan@mccauleyroach.com)
Sean McCauley (sean@mccauleyroach.com)
527 W. 39th Street, Suite 200
Kansas City, Missouri 64111
(Counsel for Golubski)

*/s/ Quentin M. Templeton*
Quentin M. Templeton