IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HOUCKS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:23-CV-02489 |
| UNIFIED GOVERNMENT OF | ) |
| WYANDOTTE COUNTY AND | ) |
| KANSAS CITY, KANSAS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ROGER GOLUBSKI'S REPLY BRIEF
IN SUPPORT OF HIS MOTION TO DISMISS**

COMES NOW Defendant Roger Golubski ("Golubski"), by and through his undersigned counsel, and submits the following Reply Brief In Support of His Motion to Dismiss.

# TABLE OF CONTENTS

Table of Contents .................................................................................................................. i

Table of Authorities ............................................................................................................. i

I. Introduction ............................................................................................................ 2

II. Reply Argument and Authorities ........................................................................... 2

 A. Plaintiffs' allegations of duress do not save their claims........................... 3

 B. Equitable estoppel does not save Plaintiffs' claims.................................... 5

 1. Plaintiffs Have Not Pleaded Facts Warranting Equitable Estoppel..................... 5

 2. Even if Equitable Estoppel Applied, Plaintiffs Failed to Timely Bring Their Claims After No Longer Being Impeded From Doing So By Alleged Threats........................ 7

 C. 42 U.S.C. § 1983 Uses State Statute of Limitations. .............................. 9

 D. Kansas Statute of Repose Should Apply to § 1983 Claims. .................... 9

 E. Williams' familial association claim is barred by the *Heck* doctrine. ..... 10

 F. Miller's failure to intervene and supervisory claims should be dismissed............ 11

 1. Miller's Failure to Intervene Claim .................................................. 11

 2. Miller's supervisor liability claim. ................................................... 12

 G. Quinn's familial association claim should be dismissed. ....................... 12

III. Conclusion ........................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Branen*, 17 F.3d 552 (2nd Cir. 1994) ............................................................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 3

*Bates v. Las Vegas Metro. Police Dept.*, Case No. 2:22-cv-00957-CDS-EJY (D. Nev. Jan 11, 2024)...11

*Bell Atl. v. Twombly,* 550 U.S. 544 (2007) ..................................................................................3

*Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019) ........................................................................ 6

*Braxton v. Zavaras,* 614 F.3d 1156 (10th Cir. 2010).................................................................... 4

*Crosgrove v. KS. Dept. of Social and Rehabilitative Srvcs.*, 162 Fed. Appx. 823 (10th Cir. 2006)9, 10

*Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000) .................................................... 11

*Est. of Knight ex rel. Knight v. Hoggard, No.* 98-1778, 98-1847, 1999 WL 390987 (4th Cir. 1999) .... 6

*Estate of Amaro v. City of Oakland*, 653 F.3d 808 (9th Cir. 2011) ........................................... 6

*Gas Service Co. v. Consolidated Gas Utilities Corporation*, 65 P.2d 584 (Kan. 1937).........................5

*Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231 (1959)..........................................6, 7

*Heck v. Humphrey*, 512 U.S. 477 (1994)..............................................................................10

*Holmes v. Boal*, 2005 WL 2122315 (D. Kan. Aug. 22, 2005) ................................................. 8

*Johnson v. Spencer*, 950 F.3d 680 (10th Cir. 2020)................................................................. 8

*Keith v. Koerner*, No. 11-CV-2281-DDC-JPO, 2014 WL 6473222 (D. Kan. Nov. 18, 2014)....3, 4, 7

*Keith v. Werholtz*, No. 11-2281-KHV, 2012 WL 1059858 (D. Kan. Mar. 28, 2012).........................3

*L. Ruth Fawcett Trust v. Oil Producers Inc. of Kan.*, 507 P.3d 1124 (Kan. 2022) ...........................5, 6

*Lowery v. Cnty of Riley*, No. 04–3101–JTM, 2005 WL 1242376 (D. Kan. May 25, 2005)..............10

*McIntyre v. Unified Gov't of Wyandotte County*, 2020 WL 1028303 (March 3, 2020).....................10

*Mejia v. Darroch*, Case No. 09-1373-WEB (D. Kan. Sep 26, 2011) ................................................ 11

*Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158 (10th Cir. 2007) ................................................................................................................12

*O'Sullivan v. Felix*, 233 U.S. 318 (1914)................................................................................ 9

*P.W.P. v. L.S.*, 969 P.2d 896 (Kan. 1998)...............................................................................3, 4, 5

*Palmer v. Brewer*, 14-00149-KD-B (S.D. Ala. Apr 07, 2015) .................................................. 11

*Rockers v. Kansas Turnpike Authority*, 991 P.2d 889 (Kan. 1999) ..................................... 6

## I. INTRODUCTION

Contrary to Plaintiff's hyperbole-laden Opposition, Golubski is neither making the "incredible request that the Court declare that Kansas approves of police officers who rape citizens and gun point, and threaten them and their families," nor "begging the Court to sanction and approve … rampant sexual proclivities and abuse of the very humans [Golubski] was sworn to protect." Plaintiffs know better. And if the Court somehow sees fit to permit these decades-old allegations to survive the statute of limitations, Golubski will dispute and defend against the allegations made in the Complaint.

Golubski is simply relying on the application of the law to Plaintiffs' pleaded facts, and matters *Plaintiffs placed* at issue in the pleadings, which demonstrate: (1) Plaintiffs' claims were *not* brought within the two-year statute of limitations; (2) the reason Plaintiffs' did not bring their claims earlier was for fear of retaliation against them and their families (i.e. duress); (3) Kansas law does not permit duress as a basis for tolling; and (4) Plaintiffs make no factual allegations that Golubski misled Plaintiffs into a false sense of security that they could bring their claims at a later time sufficient to invoke equitable estoppel. As a result, Plaintiffs' claims are barred. But, even if equitable estoppel did apply, it is clear from Plaintiffs' allegations, and the Court's other records—of which it may take judicial notice—that any alleged threats or fear which they allege caused them to not vindicate their rights ceased more than two years before filing the Complaint. As such, Plaintiffs cannot rely on equitable estoppel when the basis for estoppel ceased to prevent them from filing suit, yet they *still* let the limitations period elapse.

## II. REPLY ARGUMENT AND AUTHORITIES

This brief will address Plaintiffs' arguments in the following order: (A) that Plaintiffs are not asserting duress to toll the statute of limitations; (B) that equitable estoppel does not require that Plaintiffs be misled into thinking they can bring their claims at a later time; (C) that § 1983 has no statute of limitations; (D) that Kansas's statute of repose does not apply to § 1983 claims; (E) that Williams' familial association claim is not barred by the *Heck* doctrine; (F) Millers'

failure to supervise and failure to intervene claims; and finally (G) that Quinn can have a *threatened* interference with familial association claim.

      **A.**     **Plaintiffs' allegations of duress do not save their claims.**

      Plaintiffs claim that they are not attempting to toll the statute of limitations based upon duress. Plaintiffs argue they alone are masters of their Complaint, they did not use the word "duress," and that they have presented an equitable estoppel theory. The Court, however, is not bound by Plaintiffs' conclusory labels. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly,* 550 U.S. 544, 570 (2007). But the factual allegations in the Complaint, while disputed, amount to duress. Plaintiffs fail to illustrate how their allegations of threats and fear are *not* duress, and implore the Court to blindly adopt their label. But the Court should reject Plaintiffs' entreaty and analyze the *factual* allegations for what they are—duress.

      That Plaintiff's allegations constitute duress is critical because Kansas courts do not extend the statute of limitations based upon duress. *P.W.P. v. L.S.*, 969 P.2d 896, 904 (Kan. 1998) (explicitly rejecting duress as basis for tolling statute of limitations). Plaintiffs point to *Keith v. Werholtz*, No. 11-2281-KHV, 2012 WL 1059858 at *5 (D. Kan. Mar. 28, 2012), a prison rape case, in which Judge Vratil, interpreting Kansas law and *P.W.P.*, allowed an otherwise untimely claim to proceed to discovery based on alleged duress. Yet *Keith* is not helpful to Plaintiffs for multiple reasons.

      First, Judge Crabtree, later in the same case, altered this Court's approach at summary judgment. *Keith v. Koerner*, No. 11-CV-2281-DDC-JPO, 2014 WL 6473222, at *20-22 (D. Kan. Nov. 18, 2014) (not relying upon duress theory in denying summary judgment). Second, Judge Vratil's interpretation of Kansas law runs contrary to the Kansas Supreme Court's clear ruling in *P.W.P.*, and is not binding on this Court. Judge Vratil concluded the Kansas Supreme Court in *P.W.P.* did not reject duress as a viable theory as a matter of law, but instead did so after making a factual determination. *Keith,* at *10-11. However, in *P.W.P.* the Court concluded that Kansas courts had never used duress as a basis to toll the statute of limitations in similar circumstances

3

and ultimately held that, "to toll the statute of limitations based on an argument of duress is without merit." *P.W.P.,* 969 P.2d at 904.

To be sure, the *P.W.P.* Court did reference a doctor's testimony about incapacitation. *Id.* at 904. Yet that reference is unrelated to its consideration of tolling based upon duress. Instead, the Court was raising, and ruling out, the additional possibility of *statutory* tolling being applicable on another ground—incapacitation. *Id.* Thus, the Court in referencing the doctor's testimony was simply determining that the controlling statutes did not provide for tolling based upon incapacitation, unlike K.S.A. § 60-515. And then the Court stated that the plaintiff's expert witness "found no evidence of delusional thinking on her part." *Id.* This is simply the Court stating that plaintiff would not have qualified for statutory tolling based upon incapacitation *even if* it was available. The Court was doing nothing more than considering an additional statutory basis for tolling the statute of limitations based on incapacitation as opposed to duress. As such, the Court's reference to the doctor's testimony, even if it qualifies as a factual determination, played no role in the Court's ruling that "to toll the statute of limitations based on an argument of duress is without merit." *P.W.P.,* 969 P.2d at 904.

Judge Vratil went on to infer that "in proper cases, duress which essentially qualifies as a separate constitutional violation could justify tolling," and cited a federal decision from the Eastern District of New York for that proposition. *Keith*, at *11. But, here, both parties agree Kansas state law controls this issue; not New York. *Keith v. Koerner*, No. 11-CV-2281-DDC-JPO, 2014 WL 6473222, at *11 (D. Kan. Nov. 18, 2014) (citing *Braxton v. Zavaras,* 614 F.3d 1156, 1159 (10th Cir. 2010)). In essence, Judge Vratil filled what she considered to be a gap in Kansas law by looking to the law of a federal district court in New York. Even assuming a gap in the law existed, which is disputed, there is no reason to believe that the Kansas Supreme Court would have done the same thing. In fact, the *P.W.P.* Court had an opportunity to do exactly as Judge Vratil suggested, but chose to reject duress as a viable theory altogether. Kansas law simply does not support Judge Vratil's analysis of *Keith*. Consequently, this Court should not attach any weight to it, especially since Judge Crabtree altered course in the same case.

4

*P.W.P.*—a decision of the Kansas Supreme Court—is the best reflection of Kansas law on this issue. There, the Kansas Supreme Court expressly rejected duress as a basis for tolling a statute of limitations. Thus, the Court should grant Golubski's Motion to Dismiss in its entirety because Plaintiffs allege their decades-long failure to bring their claims was due to duress, and "to toll the statute of limitations based on an argument of duress is without merit." *P.W.P.*, 969 P.2d at 904.

### B.  Equitable estoppel does not save Plaintiffs' claims.

#### 1.  *Plaintiffs Have Not Pleaded Facts Warranting Equitable Estoppel*

Plaintiffs accuse Golubski of imposing upon them a requirement they believe does not exist to invoke equitable estoppel—to plead facts that Golubski lured them into a false sense of security that their claims would not be barred by waiting to bring them. First, Golubski does not impose that burden, the law does. *L. Ruth Fawcett Trust v. Oil Producers Inc. of Kan.*, 507 P.3d 1124, 1144-1145 (Kan. 2022). Nevertheless, despite it being *Plaintiffs' burden* to demonstrate the statute of limitations should not bar their claims, Plaintiffs fail to cite a single Kansas case, or any other case, determining that alleged threats equitably estopped a defendant from asserting a limitations defense. Instead, and predictably, all the equitable estoppel cases Plaintiffs cite deal with deceitful conduct. Which makes sense given that deceitful conduct—i.e. luring them into a false sense of security that their claims would not be barred, or concealing the conduct from plaintiff such that the plaintiff does not know they have been harmed by defendant—is required to invoke equitable estoppel. *Dunn*, 281 P.3d 540. Those cases are:

- *L. Ruth Fawcett Trust v. Oil Producers Inc. of Kan.*, 507 P.3d 1124 (Kan. 2022) involved the concealment of conservation fees improperly deducted from royalty payments. *Id.* at 1143. Meaning defendant hid the facts of the claim.

- *Gas Service Co. v. Consolidated Gas Utilities Corporation*, 65 P.2d 584 (Kan. 1937), is not even a statute of limitations case but rather involved equitable estoppel where one party "stood by and allowed [the other] to expend money…" *Id.* at 584.

5

- *Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019) (applying Utah law) involved defendants concealing viable causes of action from plaintiffs. *Id*. at 859-860.

- *Dunn v. Dunn*, 281 P.3d 540 (Kan. App. 2012) involved an insurance company's failure to send yearly statements and legal notices. *Id*. at 548-549.

- *Rockers v. Kansas Turnpike Authority*, 991 P.2d 889 (Kan. 1999) involved alleged misrepresentations by an attorney to opposing counsel. *Id*. at 117-118.

- *Estate of Amaro v. City of Oakland*, 653 F.3d 808 (9th Cir. 2011)—a federal Section 1983 case—involved police misrepresentations about an incident and refusals to provide incident reports. *Id*. at 814.

- *Est. of Knight ex rel. Knight v. Hoggard*, No. 98-1778, 98-1847, 1999 WL 390987 (4th Cir. 1999)—another federal Section 1983 case—involved misrepresentations by police about whether a police officer had discharged his weapon. *Id*. at *4.

These cases do not stand for the proposition that threats justify estoppel. And the Kansas Supreme Court reiterated in 2022 that some form of misrepresentation is necessary. As the Kansas Supreme Court stated, "The idea is that the ***misrepresentation lulled the plaintiff into a false sense of security that prevented the plaintiff from timely suing***." *L. Ruth Fawcett Trust v. Oil Producers Inc. of Kan.*, 507 P.3d 1124, 1144-1145 (Kan. 2022) (emphasis added) (citations omitted) (cleaned up). That is clearly not what Plaintiffs allege.

The only case Plaintiffs cite that comes close to supporting their argument is *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231 (1959). Plaintiffs cite *Glus* for the proposition that "no man may take advantage of his own wrong." (Doc. 23, at p. 3)  Notably, *Glus* was not a § 1983 case. Regardless, when read, that case proves Golubski's point that before equitable estoppel is warranted, the Plaintiffs must have been misled that they would not lose their ability to sue. In *Glus*, the Court decided that the plaintiff who brought a claim under the Federal Employer's Liability Act, which had a limitations period of three years, was "entitled to have his cause tried on the merits if he can prove that respondent's … conducted themselves in such a

6

way that petitioner *was justifiably misled into a good-faith belief that he could begin his action at any time* within seven years after it had accrued." *Id*. at 235 (emphasis added).  The takeaway? Federal estoppel doctrine is consistent with Kansas' in that there must be a misrepresentation luring the plaintiffs into believing their rights will not be lost.

Further, the requirement of a misrepresentation is demonstrated in Judge Crabtree's summary judgment ruling in *Keith*.  There, The Court determined the plaintiff qualified for *statutory* tolling under K.S.A. 60-515(a) because Defendant Koerner personally directed an investigator to draft a confidentiality agreement which, if violated by the plaintiff-inmate, "would result in punishment imposed by prison officials...." *Keith v. Koerner*, No. 11-CV-2281-DDC-JPO, 2014 WL 6473222, at *15-16, 17-18 (D. Kan. Nov. 18, 2014).  But the Court *doubted equitable estoppel could apply* because, despite the confidentiality agreement's penal provisions, Defendant Koerner had not "actively deceived, induced, tricked [], or made any affirmative inducement that caused plaintiff to file after the deadline." *Id*. at *21-22.  As such, the Court's analysis confirms that equitable estoppel requires a misrepresentation and that punitive threats do not trigger estoppel.

Simply stated, there is no Kansas case which supports applying equitable estoppel the Plaintiffs claim they sat on their rights for decades because they were allegedly threatened, and that they took those threats seriously (i.e. duress).  Under those facts, *P.W.P.* controls, and it requires dismissal because duress is not a meritorious basis to toll the statute of limitations.

> 2. *Even if Equitable Estoppel Applied, Plaintiffs Failed to Timely Bring Their Claims After No Longer Being Impeded From Doing So By Alleged Threats.*

Plaintiffs argue the Court should not consider facts that Golubski argues which were, apparently, strategically not alleged by Plaintiffs in their Complaint.  While generally true that Courts do not consider matters outside the pleadings on a Rule 12(b)(6) motion, it is permissible

7

for a Court to take judicial notice of matters of public record and materials in its own files. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020). That is all Golubski asks of this Court.

Plaintiffs specifically take issue with Golubski discussing the contents of Houcks' exposé from October 2021 in which Houcks told Columnist Melinda Henneberger that she was ready to testify against Golubski—more than two years before she filed suit. Plaintiffs, not Golubski, placed that article at issue by pleading its existence i*n Plaintiffs' Complaint*. Specifically, in paragraph 73, Plaintiffs allege "Houcks' anonymized story" was published on October 24, 2021, and that she agonized over the text. But despite Plaintiffs alleging it was "Houcks' story," they ask the Court to ignore *her statements* contained in that story that she was ready to testify against Golubski. The obvious reason Plaintiffs want the Court to selectively accept as true that she went public but ignoring what she said is because her statements defeat her claim of equitable estoppel or tolling. *Holmes v. Boal*, 2005 WL 2122315 *3 (D. Kan. Aug. 22, 2005) ("[E]ven *assuming* Mr. Tripplet satisfies the requirements for equitable estoppel or a form of equitable tolling based on duress" due to threats to charge him with rape if he changed his testimony, his claim was barred by the statute of limitations because those threats "no longer had any force" as of "the date [plaintiff] broke his silence.").

The same is true for Williams. The Court has in its own files the Notice of Deposition that Ophelia Williams gave in the *McIntyre* case three years before filing suit. Similarly, Quinn admits on the face of her Complaint that she broke her silence about Golubski's allegedly wrongful conduct (allegedly coercing her testimony) in 2017, six years before she filed her Complaint.[1] As for Newsom, her Complaint alleges she testified at McIntyre's exoneration hearing "in an attempt to get McIntyre's wrongful conviction overturned."[2] The Complaint further alleges that the basis for McIntyre's exoneration was Golubski's alleged bad acts in so far as "sexual assault and threats against Quinn and her being forced to perjure herself so the

---

[1] Doc. 1, ¶ 141.
[2] Doc. 1, ¶ 110.

8

Unified Government could wrongfully convict Lamonte McIntyre."[3] So, according to Plaintiffs' Complaint, she would have had to testify about those topics—Golubski's alleged wrongful conduct.

Houcks broke her silence on or before October 24, 2021, Williams broke her silence on or before November 20, 2020, and Newsom and Quinn broke their silence no later than 2017. Thus, *at the latest*, they had two years from the dates they broke their silence to pursue their rights, but each failed to do so.

### C.    42 U.S.C. § 1983 Uses State Statute of Limitations.

Plaintiffs ask this Court to overturn the Supreme Court and the Tenth Circuit's precedent that § 1983 borrows the forum state's statute of limitations, which Plaintiffs incorrectly identify as only dating back to 1985.[4] However, even still, it is undisputed that it is currently the law of the land that § 1983 claims borrow the forum state's statute of limitations. For this Court to hold differently would require it to disobey Supreme Court precedent.

Further, even if there were a scrivener's error, Congress later enacted 42 U.S.C. § 1988 which specifically stated that actions under § 1983, to the extent there is a void in federal law, apply state law. Because there is no federal statute of limitations for § 1983, § 1988 requires the Court to apply Kansas's statute of limitations.

### D.    Kansas Statute of Repose Should Apply to § 1983 Claims.

Plaintiffs argue Golubski "disingenuously asserts" the Tenth Circuit has indicated the state statute of repose should apply to § 1983 claims. There was nothing disingenuous about Golubski's assertion. In *Crosgrove v. KS. Dept. of Social and Rehabilitative Srvcs.*, 162 Fed. Appx. 823, 825 (10th Cir. 2006) (unpublished), the Tenth Circuit was grappling with which Kansas statute of limitations should apply. Importantly, one of the statutes, like K.S.A. § 60-513,

---

[3] Doc. 1, ¶ 383.
[4] See *O'Sullivan v. Felix*, 233 U.S. 318 (1914) ("That the action depends upon or arises under the laws of the United States does not preclude the application of the statute of limitations of the state" and applying that principle to claims under Rev. St. § 1977-1991 (i.e. 42 U.S.C. § 1981-1983, 1985)).

9

contained a statute of repose. While the Tenth Circuit reversed the district court's dismissal, it did so because it was not clear from the face of the complaint which statute would apply. Accordingly, the Tenth Circuit said, "while it is certainly possible that K.S.A. § 60-523(a)'s ... eight-year statute of repose should apply, this fact is not patently clear from the face of the complaint." *Id.* at 827. This quite clearly is the Tenth Circuit indicating statutes of repose apply to § 1983 claims and is in no way disingenuously asserted. And, while it is true that this Court, in *Lowery v. Cnty of Riley*, No. 04–3101–JTM, 2005 WL 1242376, at *4 (D. Kan. May 25, 2005), determined statutes of repose did not apply—a fact Golubski transparently directed the Court to in footnote 12 of his opening brief—*Lowery* predates the Tenth Circuit's decision in *Crosgrove*. And other than *Lowery*, Plaintiffs cite no other in-circuit cases post-dating *Crosgrove* supporting the proposition that the statute of repose does not apply; as is *their burden*.

> **E.   Williams' familial association claim is barred by the *Heck* doctrine.**

Aside from pointing out that Golubski was a part of the *McIntyre v. Unified Gov't of Wyandotte County* case, Plaintiffs provide no real response that would negate the holding in *McIntyre v. Unified Gov't of Wyandotte County*, 2020 WL 1028303 at *12 (March 3, 2020) that *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) bars a familial association claim premised upon an arrest where the underlying conviction still stands. There, the Court clearly stated that Rose McIntyre's familial association claim "necessarily implied the invalidity of Lamonte's conviction." *Id.* Williams brings the same claim as Ms. McIntyre, but unlike Ms. McIntyre, Williams' son's convictions still stand. Accordingly, Williams' claim is barred.

Plaintiffs also cite a footnote in *Heck v. Humphrey*, 512 U.S. at 487 n.7, apparently believing that Williams' allegations are comparable to suing over the finite issue of unlawful search after being convicted of a crime where the suit does not call the conviction into question. But here, Williams pleaded that Defendants "denied Williams relationships with ... her sons while they've spent decades in prison" as a result of having them "falsely convicted and

10

imprisoned."[5] Unlike the finite issue of a search, Williams alleges the wrongfulness of her sons' detentions, arrests, convictions, and imprisonment. Therefore, her claim attacks the validity of her sons' convictions, and she cannot bring such a claim while her sons' convictions stand.

### F. Miller's failure to intervene and supervisory claims should be dismissed.

#### 1. Miller's Failure to Intervene Claim

Plaintiffs assert that Miller's failure to intervene claim should survive because Golubski—despite not being present or having direct knowledge—*had reason to know* of the purported interrogation, and a duty to stop it, based upon his alleged generalized knowledge of, and participation in, *other* violations which allegedly occurred at *other* times and *other* places. Even in their Opposition, Plaintiffs do not demonstrate how the facts they did plead, if true, prove how Golubski had an opportunity to stop Miller's interrogation from afar without even having knowledge of it occurring, nor do they offer any authority in support of this theory.

The case law is clear that "officers who are not present at the time of an alleged incident cannot be held liable for failing to intercede." *Bates v. Las Vegas Metro. Police Dept.*, Case No. 2:22-cv-00957-CDS-EJY, at *5 (D. Nev. Jan 11, 2024) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000), as amended (Oct. 31, 2000) (finding that non-present officers cannot be held liable for failing to intercede) (citations omitted)); *Mejia v. Darroch*, Case No. 09-1373-WEB, at *12 (D. Kan. Sep 26, 2011) (granting qualified immunity because plaintiff "cannot show that [defendant officer] had an affirmative duty to intervene if [defendant officer] was not present when the incident occurred); *Palmer v. Brewer*, 14-00149-KD-B, at *7-8 (S.D. Ala. Apr 07, 2015) (calling allegation "frivolous" and stating that "[t]he Court is unaware of any duty to intervene when one is not present during the incident or to intervene after the injury"); *Anderson v. Branen*, 17 F.3d 552, 557-558 (2nd Cir. 1994) (analyzing a "close factual question" where the officer was present for the events but disputed that he had opportunity to intervene). Dismissal is appropriate.

---

[5] Doc. 1, ¶ 458.

> 2. *Miller's supervisor liability claim.*

To state a claim, the Complaint "must explain what *each* defendant did to [the plaintiff]; when each defendant did it, how the defendant's actions harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007). Despite Plaintiffs' best efforts, even after opposing Golubski's motion, Miller's supervisory claim remains conclusory and unspecific. The paragraphs of the Complaint cited by Plaintiffs do not add sufficient specificity or clarity to salvage the claim. This claim should be dismissed.

**G.   Quinn's familial association claim should be dismissed.**

Ignoring the requirements of her claim, which include the need to show a "severe" intrusion upon the familial relationship, *Halley v. Huckaby*, 902 F.3d 1136, 1156 (10th Cir. 2018), Plaintiffs believe Quinn's claim should proceed because she has such "absolute" and "full rights" to associate with her family that even an unfulfilled threat about her children being seized is actionable. Plaintiffs do not cite a case for this proposition, and the Tenth Circuit has noted that it is "not aware of a case from our court or the Supreme Court clearly establishing that [a] short seizure and interview … would unduly burden" the familial relationship. *See Id.* at 157. If short seizures are in question, common sense would dictate that Quinn's allegations, which do not include any forced separation, do not qualify as a severe intrusion upon the familial relationship. Therefore, Quinn's familial association claim should be dismissed.

### III.   CONCLUSION

WHEREFORE, Defendant Roger Golubski respectfully requests that each and every Count against him be dismissed with prejudice, that he be awarded his costs and reasonable attorney fees, and for other such relief this Court deems just and proper.

Respectfully submitted,

ENSZ & JESTER, P.C.

/s/ Chris Napolitano
CHRIS M. NAPOLITANO          KS #25499
1100 Main Street, Suite 2121
Kansas City, Missouri 64105
Telephone:   816-474-8010
Facsimile:   816-471-7910
E-mail:      cnapolitano@enszjester.com
ATTORNEYS FOR DEFENDANT
ROGER GOLUBSKI

and

/s/ Morgan L. Roach
MORGAN L. ROACH       KS #23060
SEAN P. McCAULEY      KS #20174
McCauley & Roach, LLC
527 W. 39th Street, Suite 200
Kansas City, Missouri 64111
Telephone:      816-523-1700
Facsimile:      816-523-1708
E-mails:        morgan@mccauleyroach.com
                sean@mccauleyroach.com
ATTORNEYS FOR DEFENDANT
ROGER GOLUBSKI

and

/s/ Dawn M. Parsons
DAWN M. PARSONS            KS # 16346
PETER ROTTGERS      KS # 28774
Shaffer Lombardo Shurin
2001 Wyandotte
Kansas City, MO 64108
Phone: 816-931-0500
dparsons@sls-law.com
prottgers@sls-law.com
ATTORNEYS FOR DEFENDANT
ROGER GOLUBSKI

13

## **CERTIFICATE OF SERVICE**

  I hereby certify that, on February 16, 2024, the above and foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

            /s/ Christopher M. Napolitano
            ATTORNEYS FOR DEFENDANT
            Roger Golubski