In the United States District Court
for the District of Kansas

———————

Case No. 23-cv-02489-TC

———————

MICHELLE HOUCKS, ET AL.,

*Plaintiffs*

v.

UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS
CITY, KANSAS, ET AL.,

*Defendants*

———————

## MEMORANDUM AND ORDER

Five Plaintiffs sued the Unified Government of Wyandotte County and Kansas City, Kansas and eight former or current police chiefs and detectives in their individual capacities under 42 U.S.C. § 1983, alleging that Defendants violated their constitutional rights. Doc. 1. Defendants moved to dismiss. Docs. 17 & 19. For the following reasons, Defendants' motions are granted.

## I

### A

A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining

allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation with multiple defendants).

Ordinarily, a motion to dismiss is decided on the basis of the pleadings alone. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). But a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

This dispute implicates an affirmative defense. At the pleading stage, the defendant bears the burden of pleading affirmative defenses. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). A plaintiff need not anticipate those defenses in the complaint to survive a motion to dismiss. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298–99 (10th Cir. 2018). Sometimes, however, it is appropriate to dismiss a case based on an affirmative defense when the allegations in the complaint establish that the action is precluded, such as if the facts alleged establish that the cause of action is time barred. *Id.* But this is only appropriate "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Schell v. Chief Just. & Justs. of Okla. Sup. Ct.*, 11

F.4th 1178, 1191 (10th Cir. 2021) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). The mere absence of pertinent dates does not make it clear, on the pleading's face, that a statutory time bar has extinguished a cause of action. *See Bistline v. Parker*, 918 F.3d 849, 888–89 (10th Cir. 2019).

## B

Plaintiffs are five individuals who encountered the Kansas City, Kansas Police Department and Defendants in various ways over the last three decades. Doc. 1 at ¶¶ 4, 16–20.[1] The same background context underlies each Plaintiff's claims. They allege that Defendants used their power and authority as police chiefs and detectives to maintain a system that protected criminal drug and trafficking operations in Kansas City, Kansas. *Id.* at ¶ 35. As part of this ongoing conduct, Defendants protected criminal operations by providing them notice in advance of police raids and by covering up murders that individuals involved in those operations committed. *Id.* at ¶¶ 5, 35, 215. They also allegedly used this power to sexually abuse and exploit black women or to allow other officers to do so without interfering. *Id.* at ¶¶ 45–55.

But the specific events giving rise to Plaintiffs' claims vary. Take Michelle Houcks first. Houcks alleges that Defendant Roger Golubski raped her in September 1992 after telling her he was a police officer and offering to give her a ride home. *Id.* at ¶¶ 59–66. During that incident, Golubski warned Houcks "to keep her mouth shut." *Id.* at ¶ 66. Two months later, Golubski approached Houcks in Kansas City, Kansas and threatened that "something bad would happen to her or her brother" if she did not stay quiet about what happened. *Id.* at ¶ 69. Houcks did not tell anyone about what happened until 2021, when the Kansas City Star published her story anonymously. *Id.* at ¶ 73.

Next is Plaintiff Sandra Newsom. Newsom's son Doniel Quinn was a victim of a double murder in April 1994. *Id.* at ¶¶ 75–78. Newsom was concerned that nobody from the Unified Government had informed her that her son had been murdered, so she attended a meeting to address her concerns. *Id.* at ¶¶ 79–90. A few days after the meeting, Golubski went to Newsom's house. *Id.* at ¶ 91. He made sexual comments to her and told her that he would update her on Doniel's

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

investigation. *Id.* at ¶¶ 95–101. Newsom alleges that Golubski framed
Lamonte McIntyre, who was later exonerated, for her son's murder to
protect the real culprits, a man known to her as a "drug kingpin," Cecil
Brooks, and another man with the street name of "Monster," Neil Ed-
gar Jr.[2] Doc. 1 at ¶¶ 52, 75, 107.

The next Plaintiff, Niko Quinn, focuses on her involvement as a
witness to the same murder of Doniel Quinn. *See* Doc. 1 at ¶ 123. Ms.
Quinn was present at the murder and described the shooter to police.
*Id.* Officers, including Golubski and Dennis Ware, came to her house
the next day and "attempted to force, or lead Quinn into, a false iden-
tification of McIntyre as the shooter." *Id.* at ¶ 125. A few days later,
Golubski threatened Quinn not to tell anyone that she suspected
"Monster," and not McIntyre, killed Doniel Quinn. *Id.* at ¶ 127. Within
months, Quinn's family was contacted by Golubski and Assistant
Prosecuting Attorney Terra Morehead, who stated that if Quinn did
not call Morehead, "they would take Quinn's children away" and she
would never see them again.[3] *Id.* at ¶ 130. Quinn alleges that Morehead
repeatedly threatened to take Quinn's kids away and put her in jail if
she did not falsely identify McIntyre as the individual who murdered
Doniel. *Id.* at ¶¶ 131–137. After Quinn gave in and testified that McIn-
tyre killed Doniel, Golubski "actively stalked" her until 2012, finding
her at her home, in grocery stores, even in the middle of the night and
in different locations. *Id.* at ¶ 139–140. Quinn also alleges that

---

[2] McIntyre was convicted of murdering Doniel Quinn and another individual
Donald Ewing. *See State v. McIntyre*, 912 P.2d 156, 158–59 (Kan. 1996). After
several attempts, McIntyre's sentence was vacated and the charges against
him were dismissed. *See State v. McIntyre*, Case No. 94CR1213, Order Releas-
ing Defendant From Custody and Dismissal of 94CR1213 (Wyandotte Cnty.
Dist. Ct. Oct. 13, 2017). McIntyre then brought a civil suit against Golubski,
the Unified Government, and several other individual defendants. *See McIn-
tyre v. Unified Gov't of Wyandotte Cnty. & Kan. City, Kan.*, No. 18-2545, 2022 WL
2337735, at *1 (D. Kan. June 28, 2022) (considering civil claims that "defend-
ants arrested, prosecuted and imprisoned Lamonte McIntyre for murders
that he did not commit"). That suit was dismissed pursuant to the parties'
voluntary agreement under Fed. R. App. P. 42(b). *McIntyre v. Golubski*, No.
22-3115, 2022 WL 17820087, at *1 (10th Cir. 2022).

[3] Disciplinary proceedings were initiated against Morehead. *In re Morehead*,
546 P.3d 1227,1227 (Kan. 2024). In April 2024, the Supreme Court of Kansas
accepted Morehead's request to voluntarily surrender her Kansas law license
under Supreme Court Rule 230(a), terminating any pending proceedings. *Id.*

4

Golubski threatened her to drop a complaint she had filed against an unidentified officer in 2000. *Id.* at ¶ 148. After that conversation, he sexually assaulted her. *Id.* at ¶¶ 149–150. In 2017, Quinn came forward and told McIntyre's family that her testimony was coerced, but she remained silent about the sexual assault because she feared for the safety of herself and her children. *Id.* at ¶¶ 141–150.

Then, the Complaint describes Ophelia Williams's claims. Williams alleges that "Golubski falsely accused [her] twin sons of murder to protect organized criminals and to gain access to her so he could rape and sexually assault her." *Id.* at 43. In August 1999, Williams's sons, Ronell and Donell, were investigated for a double murder of two individuals. *See id.* at ¶¶ 155–157. Officers, including Golubski, went to Williams's home to search for evidence of the crime. *Id.* at ¶¶ 159–160. Williams alleges that they did not find any evidence inside the home, but that officers stated they found shell casings in the back yard. *Id.* at ¶ 161. Ronell and Donell confessed to the murder in exchange for their younger brother's release. *Id.* at ¶ 162. Several days later, Golubski went to Williams's home and falsely told her that he was working on her sons' case and could help her. *Id.* at ¶ 164. Then, Golubski raped her. *Id.* at ¶¶ 165–166. He continued to come to her house and rape her multiple times a month for several years. *Id.* at ¶ 168. One day, Williams threatened to report Golubski, and he replied: "Report me to who, the police? I am the police." *Id.* at ¶ 167. On another day, he threatened to shoot Williams if she did not comply. *Id.* at ¶ 172. And on another, he told her that if she told anybody, "she would never be found again." *Id.* at ¶ 177. Williams did not tell anybody what happened because she "remained afraid that Golubski would shoot and kill her if she spoke out or told anyone about Golubski's conduct." *Id.* at ¶ 176.

The last plaintiff is Richelle Miller. Miller's claims stem from Defendants Michael Kill and Clayton Bye's conduct over a two-day period that started on June 4, 2002. *Id.* at ¶ 179. Miller received a call from the police department instructing her to come to a morgue, where Kill and Bye were waiting for her, to identify her father's body. *Id.* at ¶¶ 179–180. Seeing the body caused Miller to have a strong emotional response because it "was so badly burned that it was unidentifiable." *Id.* at ¶ 180. Then, Miller was taken to the police station, where Kill and Bye told her details of her father's death and interrogated her for nineteen hours, rotating so that only one officer was in the room with Miller at a time. *Id.* at ¶¶ 183–193. They did not let her leave, but she was never

"advised that she was a suspect in a criminal investigation" or allowed to contact an attorney. *Id.* at ¶¶ 185–186. At one point, Miller alleges that Kill demanded she have sex with him. *Id.* at ¶¶ 188–190. After that, the interrogation continued until 2:00 in the morning. *Id.* at ¶ 192.

Based on the events described above, Plaintiffs filed suit in November 2023. Doc. 1. The Complaint contains twenty-eight counts against some or all of the defendants, all arising under 42 U.S.C. § 1983. Each plaintiff brings a count alleging that one or more defendants deprived her of liberty without due process of law. Doc. 1 at ¶¶ 287–296 (Count 1), ¶¶ 329–339 (Count 6), ¶¶ 385–394 (Count 12), ¶¶ 439–449 (Count 18), ¶¶ 496–504 (Count 24). Each plaintiff also brings counts against all or some of the defendants for conspiring to violate her civil rights, failing to intervene in the deprivation, failing to supervise the individuals who carried out the deprivation, and maintaining a custom or policy that allowed the defendants' conduct to continue without reprisal. Doc. 1 at ¶¶ 297–328 (Counts 2–5), ¶¶ 353–384 (Counts 8–11), ¶¶ 407–438 (Counts 14–17), ¶¶ 464–495 (Counts 20–23), ¶¶ 505–536 (Counts 25–28). And three Plaintiffs—Quinn, Newsom, and Williams—bring an additional count of interference with the constitutional right to familial association. Doc. 1 at ¶¶ 340–352 (Count 7), ¶¶ 395–406 (Count 13), ¶¶ 450–463 (Count 19).

Defendants moved to dismiss Plaintiffs' claims. Docs. 17 & 19. Golubski contends that Plaintiffs' claims against him are time barred, and even if they are not, that several claims against him fail to plausibly allege Plaintiff's entitlement to relief.[4] Doc. 18. The other seven individual Defendants and the Unified Government also moved to dismiss, contending that Plaintiffs' claims are time barred, that Plaintiffs failed to state a claim entitling them to relief, and that the individual Defendants are entitled to qualified immunity. Doc. 19. Plaintiffs

---

[4] Golubski died on December 2, 2024. Doc. 43 (Suggestion of Death). Under Kansas law, Golubski's death does not extinguish Plaintiffs' claims against him. Kan. Stat. Ann. § 60-1801(a); *see also Grandbouche v. Clancy*, 825 F.2d 1463, 1465 (10th Cir. 1987) (holding that Section 1983 looks to state law for questions of survivorship). No party has filed a motion to substitute Golubski as a defendant, but the parties' time to do so has not yet expired. *See* Fed. R. Civ. P. 25(a)(1) (allowing ninety days for parties to file a motion to substitute a party after a suggestion of death is filed before a case can be dismissed due to a party's death). Accordingly, Golubski's motion will be decided on the merits.

opposed both motions, Docs. 23 & 24, to which Defendants replied, Docs. 25 & 26.

## II

Plaintiffs' Complaint, on its face, shows that their claims are time-barred by the applicable two-year statute of limitations. And Plaintiffs did not identify any plausible legal basis to overcome that time bar under Kansas law. Accordingly, Defendants' motions to dismiss are granted.

## A

Defendants contend that a two-year statute of limitations applies to Plaintiffs' claims. Doc. 18 at 9–10; Doc. 19 at 7–8. All of Plaintiffs' claims invoke 42 U.S.C. § 1983, which lacks a statute of limitations of its own. *Hardin v. Straub*, 490 U.S. 536, 538–39 (1989). Instead, "[l]imitations periods in [Section] 1983 suits are to be determined by reference to the appropriate state statute of limitations." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (quoting *Hardin*, 490 U.S. at 539). In this context, that means the underlying state's statute of limitations for personal injury torts. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). Kansas has one, K.S.A. § 60-513, and it provides two years in which to sue, *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1172 (10th Cir. 2015). So Plaintiffs had two years to bring their claims after they accrued.[5]

Accrual for a Section 1983 claim "is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388. And under federal law, a Section 1983 claim accrues when "the plaintiff can file suit and obtain relief." *Id.* (citation omitted); *see also Smith v. City of*

---

[5] Defendants also argue that Kansas's ten-year statute of repose in Kan. Stat. Ann. § 60-513(b) applies to bar Plaintiffs' claims. Doc. 18 at 14–16; Doc. 19 at 11. Neither the Supreme Court nor the Tenth Circuit has decided whether Section 1983 claims borrow statutes of repose from state law like it does for state statutes of limitation. Because Plaintiffs have not alleged facts sufficient to overcome Kansas's two-year statute of limitations, it is unnecessary to determine the unsettled question of whether Kan. Stat. Ann. § 60-513(b) may apply to bar a Section 1983 claim. *See Smith v. TFI Fam. Servs., Inc.*, No. 17-2235, 2019 WL 6037380, at *6 (D. Kan. Nov. 14, 2019) (declining to decide "what effect, if any, the [statute of repose] might have had" on the plaintiff's Section 1983 claim because it was barred for other reasons).

*Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (noting that Section 1983 claims alleging constitutional violations "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated") (internal quotation marks omitted).

The Complaint, on its face, makes it clear that each of the plaintiff's claims accrued more than two years before they filed suit on November 3, 2023. *Fernandez*, 883 F.3d at 1299 (explaining that a claim should only be dismissed as untimely on a Rule 12(b)(6) motion when it is clear on the face of the complaint that the claims are time barred). All parties, Plaintiffs included, agree. Doc. 18 at 12–14; Doc. 23 at 7; Doc. 19 at 8–9; Doc. 24 at 3. As a result, all claims are time-barred.

**B**

Plaintiffs, though admitting the claims fall to the statute of limitations, focus their arguments on several bases to overcome that preclusion. None are viable under Kansas law.

First, Plaintiffs assert that Congress did not intend for state statutes of limitations to apply to Section 1983 claims. Doc. 1 at ¶¶ 277–285; Doc. 23 at 12–14; Doc. 24 at 6–7. That argument is without merit because it contravenes binding precedent that, for claims arising in Kansas, the two-year statute of limitations applies. *See Brown v. Unified Sch. Dist. 501, Topeka Pub. Schs.*, 465 F.3d 1184, 1188 (10th Cir. 2006). To the extent Plaintiffs think that position should be reconsidered, they may appeal to the Tenth Circuit and/or seek a petition for writ of certiorari. But in the district court, the law is plain. *See Millard v. Camper*, 971 F.3d 1174, 1177 (10th Cir. 2020) (reversing district court's ruling because it "contravenes binding Supreme Court and Tenth Circuit precedent"); *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (explaining that lower courts must follow binding precedent and leave to the Supreme Court "the prerogative of overruling its own decisions").

Second, Plaintiffs claim that Kansas's equitable estoppel doctrine overcomes the two-year statute of limitations.[6] Doc. 1 at ¶¶ 254–276; Doc. 23 at 4–10; Doc. 26 at 2–4. State law applies to questions of equitable tolling and estoppel. *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014). This is because "[i]n virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application." *Hardin*, 490 U.S. at 539 (internal quotations omitted). Because federal law is already "relying on the State's wisdom in setting a limit," a Section 1983 suit also borrows state-law exceptions to that limit. *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 485–86 (1980). Tolling and estoppel doctrines are necessarily part of the state's "value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Id.* (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 463–64 (1975)). As a result, Section 1983 borrows state law exceptions to statutes of limitation "as long as that law is not inconsistent with federal law." *Hardin*, 490 at 538; *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 n.5 (10th Cir. 2004). Both the Supreme Court and the Tenth Circuit have explained that generally applicable state tolling principles are not inconsistent with Section 1983's policies of compensation, deterrence, uniformity, and federalism. *Tomanio*, 446 U.S. at 486–92; *Alexander*, 382 F.3d at 1217 n.5. So, to overcome Kansas's two-year statute of limitations, Plaintiffs must have plausibly alleged an exception to that statute.

A party attempting to invoke equitable estoppel "must show that another party, 'by its acts, representations, admissions, or silence when it had a duty to speak, induced [the first party] to believe certain facts existed,' and also that the first party 'rightfully relied and acted upon such belief.'" *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 994 (10th Cir. 2019) (quoting *Mut. Life Ins. Co. of N.Y. v. Bernasek*, 682 P.2d 667, 730 (Kan. 1984)) (alterations in original). In the context of a

---

[6] Plaintiffs have clarified that they are seeking to estop Defendants from relying on the statute of limitations and not, despite earlier suggestions, arguing that the limitations period has been tolled. *Compare* Doc. 1 at 75–83 (using the term "toll" but analyzing the elements of equitable estoppel), *with* Doc. 23 at 7 (clarifying that Plaintiffs seek to overcome Defendants' statute of limitations argument on equitable estoppel grounds), *and* Doc. 24 at 3–4 (same).

statute of limitations defense, equitable estoppel serves to preclude a defendant from relying on the defense when the defendant "has acted in such a fashion that his conduct is sufficient to lull his adversary into a false sense of security forestalling the filing of suit until after the statute [of limitations] has run." *Bell v. City of Topeka, Kan.*, 279 F. App'x 689, 693 (10th Cir. 2008) (quoting *Coffey v. Stephens*, 599 P.2d 310, 312 (Kan. 1979)).

A plaintiff must show that the defendant lied or misrepresented facts leading the plaintiff to believe he or she did not need to timely file a lawsuit. *L. Ruth Fawcett Tr. v. Oil Prods. Inc. of Kan.*, 507 P.3d 1124, 1145–46 (Kan. 2022); *Dunn v. Dunn*, 281 P.3d 540, 549–55 (Kan. Ct. App. 2012) (collecting cases over three decades). For example, the Kansas Supreme Court found that equitable estoppel was triggered when a defendant was improperly charging fees to a plaintiff's royalty payments but misrepresenting them as state tax deductions on the check stubs. *L. Ruth Fawcett Tr.*, 507 P.3d at 1145–46. The defendant could not rely on the statute of limitations because it was the defendant's misrepresentations that caused the plaintiff not to file suit before the statute of limitations expired. *Id.* This element requires the plaintiff to show that the defendant's actions misrepresented the truth for the purpose of inducing the plaintiff not to file a lawsuit. *See, e.g., Bernasek*, 682 P.2d at 671 ("While actual fraud, bad faith or an attempt to mislead or deceive is not essential to create an equitable estoppel, it is necessary to show both misrepresentation and detrimental reliance to invoke the doctrine."); *see also Bouton v. Byers*, 321 P.3d 780, 792 (Kan. Ct. App. 2014) (explaining that courts often misstate the elements of promissory estoppel by including misrepresentation as an element because they are confusing it with the elements of equitable estoppel).

Plaintiffs identify two misrepresentations. First, they claim that Defendants misrepresented that they "were entering Plaintiffs' homes for official police business, including criminal investigations." Doc. 1 at ¶ 257(a). Second, they contend that Defendants "misrepresent[ed] an ability to influence criminal matters important to and involving Plaintiffs if Plaintiffs did not tell anyone or otherwise publicize Defendants' conduct," *id.* at ¶ 257(b).

These misrepresentations are insufficient to trigger equitable estoppel under existing Kansas case law. *Contra* Doc. 23 at 5 (citing Doc. 1 at ¶¶ 256–257, 266). They do not support the notion that Plaintiffs could reasonably rely on those statements to delay bringing their federal lawsuit for several decades. *See L. Ruth Fawcett Tr.*, 507 P.3d at

1145–46. Their argument would effectively abrogate the statute of limitations, permitting them "to avoid the limitations period for § 1983 claims indefinitely by alleging an episode of official intimidation." *See Vergara v. City of Chicago*, 939 F.3d 882, 887 (7th Cir. 2019) (finding that indefinitely prolonging equitable estoppel based on police officers' threats that intimidated plaintiffs into silence violated the important policies that warrant statutes of limitations); *Tomanio*, 446 U.S. at 478 (explaining these same policies underlying statutes of limitations).

Nor did Plaintiffs plausibly allege that Defendants were silent in the face of a duty to speak. *Contra* Doc. 23 at 5, 9; Doc. 24 at 4. They argue that Defendants had a duty "to protect and serve" because they were police officers. Doc. 1 at ¶ 257. Although silence can, in some instances, give rise to equitable estoppel under Kansas law, *Steckline Comm'ns, Inc.*, 388 P.3d 84, 91–92 (Kan. 2017), Plaintiffs' protect-and-serve argument does not create a cognizable duty sufficient to establish estoppel. *See Shaffer v. City of Topeka*, 57 P.3d 35, 39 (Kan. Ct. App. 2002) (holding that a government entity being sued had no duty to inform the plaintiff of the statute of limitations for his claim because it did not possess material knowledge regarding the time bar that the plaintiff could not independently discover). As a result, Plaintiffs have not alleged facts that fit into Kansas's existing estoppel framework.

The rest of Plaintiffs' allegations labeled "misrepresentations" are actually allegations of duress. In particular, Plaintiffs argue that Defendants' affirmative conduct of threatening to harm them or to influence legal matters if they filed suit or disclosed Defendants' conduct gives rise to equitable estoppel. Doc. 23 at 7–9 (citing ¶¶ 256–57, 266); Doc. 24 at 4–5 (same). They state that they wanted to pursue their claims but chose not to do so because if they did, they believed that "they and their family would be harmed, killed, or set up for a criminal matter for which they were innocent, or that Defendants would interfere with Plaintiffs' and their families' criminal matters." Doc. 1 at ¶ 259. Some jurisdictions recognize this concept as "estoppel by duress." *See, e.g., Baye v. Diocese of Rapid City*, 630 F.3d 757, 761–62 (8th Cir. 2011) (defining "estoppel by duress" as when "a defendant who has continuously threatened or abused the plaintiff during the limitations period is estopped from raising the defense"). Plaintiffs have not provided authority suggesting either that the Kansas Supreme Court has previously or would likely recognize such a theory. *See Wallace*, 549 U.S. at 394 (explaining that tolling was not appropriate where "Petitioner has not brought to our attention, nor are we aware of, Illinois

cases providing tolling in even remotely comparable circumstances"); *see also Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901–02 (10th Cir. 2005) (recognizing that when federal courts face unsettled questions of state law, they must predict state law but not "create or modify it").

But even if the Kansas Supreme Court would recognize these types of threats and intimidation as a basis to meet the first element of equitable estoppel, Plaintiffs' Complaint would be untimely still. Plaintiffs would have needed to allege facts that each Defendant threatened or intimidated Plaintiffs and that the threats continued until Plaintiffs filed their Complaint. *Alexander*, 382 F.3d at 1218–19 (explaining in the equitable tolling context that even if tolling were warranted at some point, the tolling stops when the exceptional circumstances have ended); *Baye*, 630 F.3d at 761–62  (declining to determine whether South Dakota courts recognized estoppel by duress because the threats in that case did not continue up to the point the plaintiff brought the action); *Rakes v. United States*, 442 F.3d 7, 26 (1st Cir. 2006) (explaining that estoppel by duress required continuous conduct by the same individual or entity responsible for the original tort); *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 358 (5th Cir. 2011) (finding that violent threats against a plaintiff to stop all lawsuits against the defendant did not toll the statute of limitations beyond when the last threat was made).

The first problem is that Plaintiffs do not plausibly allege facts that each Defendant threatened each of them. Two of the Plaintiffs, Newsom and Miller, for example, do not allege that any Defendant made an affirmative statement to them amounting to a threat that something bad would happen to them if they told anyone about the defendants' conduct or if they filed a lawsuit. The other three Plaintiffs—Houcks, Quinn, and Williams—only allege threats from Golubski and none of the other defendants. Doc. 1 at ¶¶ 66, 69, 130, 139–40, 148, 167, 177. As a result, all claims except Houcks's, Quinn's, and Williams's against Golubski would be time barred even if Kansas recognized estoppel based on threats. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 174–75 (S.D.N.Y. Apr. 18, 2019) (explaining that the plaintiffs must allege threats by each defendant they seek to estop).

The other problem is that Plaintiffs do not provide authority supporting their contention that equitable estoppel could delay their claim for multiple decades. Houcks, Quinn, and Williams each allege that Golubski threatened that they or their families would be physically harmed or wrongfully incarcerated if they told anyone about Golubski's conduct. *See* Doc. 1 at ¶¶ 56–63, 114–52, 153–77. But the

last threat or intimidating conduct that any of the plaintiffs allege occurred in 2012. *Id.* at ¶ 139. So, even viewing the Complaint favorably, these plaintiffs still waited more than a decade to file suit. And they have identified no legal basis to justify their failure to file suit during that time. *See Alexander*, 382 F.3d at 1219 (finding that "an openly hostile racial environment, denial of responsibility by government officials, and the grand jury's exoneration of white rioters, and its indictment of African-American victims" justified tolling the statute of limitations but the plaintiffs' claims were barred because they filed their claims three decades after the extraordinary circumstances dissipated); *Van Tu v. Koster*, 364 F.3d 1196, 1199–1200 (10th Cir. 2004) (holding that tolling a *Bivens* claim for twenty-eight years was not justified "even if some degree of equitable tolling were appropriate" based on plaintiffs' circumstances).

The cases in other jurisdictions that have faced similar contentions have universally rejected the argument that equitable estoppel continues to preclude the statute of limitations from applying after the threats have ceased. *See, e.g., Sarfati v. Antigua & Barbuda*, 923 F. Supp. 2d 72, 80 (D.D.C. 2013) (holding that general allegations of continued fear twelve years after threat abated was not sufficient to overcome statute of limitations on estoppel grounds); *Vergara*, 939 F.3d at 887 (concluding that a police officer's threats tolled the limitation for three and half years after the threats stopped). These cases suggest that the two-year statute of limitations would bar Plaintiffs' claims even if the Kansas Supreme Court recognized their asserted grounds for estoppel. Consequently, Plaintiffs' claims must be dismissed because the face of the Complaint makes it clear that their claims are time barred. *Fernandez*, 883 F.3d at 1299.

\* \* \*

The Complaint describes serious official misconduct, including allegations that law enforcement officers systemically and repeatedly sexually assaulted Plaintiffs and framed their family members for crimes they did not commit. That the allegations fail to state a claim on which relief may be granted says nothing about the merits of the claims. Instead, as the Supreme Court has noted, "statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable." *United States v. Kubrick*, 444 U.S. 111, 125 (1979); *see also Alexander*, 382 F.3d at 1220 ("While we have found no legal avenue

exists through which Plaintiffs can bring their claims, we take no great comfort in that conclusion.").

### III

For the foregoing reasons, Defendants' Motions to Dismiss, Docs. 17 & 19, are GRANTED.

It is so ordered.

Date: January 30, 2025                _s/ Toby Crouse_____
                                      Toby Crouse
                                      United States District Judge